110 ' 1030<br>120    45

(35 South. 275.)

No. 14,050.

## COX et al. v. LEA'S HEIRS.

(Nov. 17, 1902.)

WILL—PROBATE—ATTACK—FRAUD—PRE-SCRIPTION—ACTIONS FOR NULLITY.

1. Proceedings leading to the probate of a will in common form are open to attack from those not made parties thereto upon any grounds that would be sufficient to support an action to establish the nonexistence of the will.

2. Where the plaintiffs, attacking an instrument probated as a will, rely on a charge of fraud, to avoid prescription, the charge should be specifically made, and should be coupled with averments which, if sustained, would acquit them of laches in the matter of the discovery of the fraud.

3. Actions for the nullity of wills, based upon alleged defects in the manner of their execution, are barred by the prescription of five years, under Civ. Code, art. 3542; but that prescription is inapplicable to an action, the purpose of which is to have it decreed that an instrument probated in common form, and without notice, as a last will, was never, in point of fact, signed, and that the mark in place of the signature was never affixed, by the putative author.

On Rehearing.

4. Actions for the nullity of testaments are prescribed by five years. Civ. Code, art. 3542.

5. Where no testament has been made, and

that which purports to be a testament has been probated, the suit to annul does not fall within the five-years term of prescription.

6. The issues came before the court on the hearing of an exception which admits temporarily the facts alleged.

7. They are, in substance, that there was no will at all, and by implication, at least, suggests a wrong, into which inquiry should be made, and therefore the case is remanded.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Robert M. Cox and others against the heirs of W. O. Lea. Judgment for defendants, and plaintiffs appeal. Modified.

Boatner, Dodds & Boatner, for appellants. Fenner, Henderson & Fenner, for appellees.

### Statement of the Case.

MONROE, J. The plaintiffs, suing as the heirs at law of Mary Jane Cox, predeceased wife of William O. Lea, deceased, allege, in substance, that the two persons named were married in Mississippi in 1855, with the intention of establishing their domicile in Louisiana, and that they thereafter came to this state, and lived here until the death of Mrs. Lea, in 1892; that William O. Lea, at or shortly after his marriage, received $15,000, and 27 negro slaves, as the inheritance of his wife, and converted the same to the use of the community; that in June, 1892, he presented to the civil district court an instrument in writing purporting to be the last will and testament of his deceased wife, by public act, "dictated to the notary, in the presence of the witnesses, reduced to writing by him, in her and their presence, read over to and approved by testatrix, and signed by her, by the making of her mark, she being too weak, from illness, to sign the same," and further purporting to bequeath all the property of which she might die possessed to her husband, and that on the same day said instrument was ordered to be registered and executed, and said Lea was recognized as sole heir and universal legatee of his wife, and put in possession of her estate; that the property included in said decree was acquired during the marriage, and fell into the community; that an undivided half interest therein vested in petitioners, as the heirs of

the decedent, subject to the usufruct, for life, of the surviving spouse, and that petitioners' right of action did not arise until his death; that the instrument purporting to be the last will of Mrs. Lea was not in fact her act and deed, and that the recitals to the effect that it was dictated, approved, and signed by her, by making her mark, are untrue; that, at the time said paper was written, Mrs. Lea was unconscious and speechless, and said nothing in dictation or in approval thereof, nor did she sign her name, or attempt to do so; that, at the request of the notary, one of the witnesses raised her to a sitting position in the bed, and attempted to place a pen in her hand, but that her nerveless fingers refused to grasp the pen, and she did not make the mark which appears as hers on said instrument, and which the notary recites was made by her, being physically incapable of doing so, and mentally incapable of knowing the object and purpose of the same; that, for these reasons, and for the further reason that it was rendered ex parte and without notice to petitioners, or the appointment of an attorney for absent heirs, the judgment ordering the execution of said instrument as the last will of Mrs. Lea is null.

Plaintiffs further allege that William O. Lea died in New Orleans in March, 1901, and that the defendants herein were a few days later sent into possession of his estate, as his heirs at law, by virtue of a judgment of the civil district court, and that said judgment is void as to petitioners because rendered ex parte and without citation, but that the defendants, having accepted the succession of said Lea, purely and simply, are liable for its debts. They pray that a curator ad hoc be appointed to represent certain of the defendants who reside elsewhere, and, the parties being cited, that the probate of "the instrument purporting to be the will of the said Mrs. Lea, and the decree * * * ordering the execution thereof, * * * be decreed null and void, and that the said instrument be declared not to have been the will and testament of the said Mrs. William O. Lea," and that petitioners be recognized as the heirs of said decedent, and have judgment against the estate and heirs of William O. Lea for $15,000, with interest, "and be recognized as the owners of an undivided.

one-half interest in the property described in the petition of the said William O. Lea praying for the execution of the alleged last will and testament of his said deceased wife, and that the same be sold in due course of law to effect a partition thereof."

To this the resident defendants pleaded the prescription of five years, in which the nonresident defendants concurred, after a plea to the jurisdiction with respect to any demands against them save such as relate to the nullity of the will and the ownership of the real estate described. Thereafter the plaintiffs filed a supplemental petition alleging "that they were not aware of the frauds practiced in the confection of the written instrument purporting to be the last will and testament of the said Mrs. William O. Lea, deceased, as set forth in their said original petition, until after the death of the said William O. Lea, to wit, until after March 7, 1901, and that they failed to institute at an earlier date their suit to annul the probate of the said written instrument only because of their ignorance of the aforesaid frauds, and their belief, up to the time of the death of said Lea, that the said instrument was the genuine will of their said deceased sister." And to this supplemental petition the exceptions previously filed were renewed.

In maintaining the plea of prescription, the judge a quo said:

"The real object of the suit is to annul the will of Mrs. Lea because of certain alleged defects in its confection, and the plaintiffs cannot escape from that position by alleging that the instrument acted upon by the district court is not the will of Mrs. Lea. It is such an instrument, unless that instrument is forged, or other fraud has been practiced, none of which is charged in this case with the definiteness to admit of proof."

## Opinion.

By the judgment of a court of competent jurisdiction, recognizing the instrument presented to it, and ordering it to be registered and executed as the last will of Mrs. Lea, that instrument, whether possessing it originally or not, acquired the quality, prima facie, of a testamentary disposition, and became a muniment of title, under which certain property has since been held by the person named as universal legatee and by his heirs, the present defendants. And if their possession had continued for another year this action would, perhaps, have been barred by the prescription of 10 years, since the title under which they hold is valid upon its face, is translative of the property, and, for aught that appears, they have been possessors in good faith. But the 10 years had not elapsed when the action was brought, and, as the proceedings leading to the probate of the alleged will were ex parte, they are open to attack upon any grounds that would be sufficient to support an action to annul, or to establish the nonexistence of the instrument itself; hence, if the grounds relied on by the plaintiffs are sufficient for the latter purpose, they are sufficient for the former. Sophie v. Duplessis, 2 La. Ann. 725; Provost's Heirs v. Provost, 13 La. Ann. 574; Succession of Justus, 45 La. Ann. 192, 12 South. 130.

To the action, as brought, the defendants plead the prescription of five years, under Civ. Code, art. 3542, which reads: "The following actions are prescribed by five years: That for the nullity or rescission of contracts, testaments, or other acts. * * *" This is a statute of repose, adopted with reference to attacks upon contracts, testaments, and other acts originally void, or voidable, rather than to actions for the nullity of transactions, and instruments which, being originally valid, are invulnerable and require no other support than their own validity. But whether with regard to the one class or the other, the lawmaker says to all who may be concerned: "It is to the interest of the community that rights dependent upon these contracts, testaments, and other acts shall not be held indefinitely in suspense; and, unless you present yourself within five years, the law will condone their defects, supposed or real, and you shall not be heard thereafter to complain of them." And this declaration is found in, and is to be construed with, the same law that prescribes, on pain of nullity, the forms in which testaments shall be made. It follows, therefore, that a testament, void by reason of certain defects, may nevertheless exist, within the contemplation of law, and that such defects are forgiven by the law, and, by operation of the law, are presumed to be forgiven by those who might complain of them, unless their

complaints are made within the time prescribed.

The rule thus stated presupposes, however, the actual existence of the testament, and that its dispositions are not in contravention of public policy or morals; and it is subject to the exception that an action of nullity may be maintained, notwithstanding the lapse of time prescribed, if it is founded upon a charge of fraud, specifically made, and coupled with averments which, if sustained, would be sufficient to acquit the person bringing it of laches in the matter of the discovery of the fraud.

As to the presumption first mentioned, the statute speaks for itself, in referring to "contracts, testaments and other acts" as existing things; and whilst, in the instant case, if Mrs. Lea left no testament, the statute has no application, upon the other hand, if, in point of fact, she left a testament, however defective, the plaintiffs cannot now be heard to attack its validity, save upon the ground that it contravenes public policy or morals, or that it was executed in fraud, for which the defendants are responsible, and with respect to the discovery of which the plaintiffs have been guilty of no laches.

As to the presumption next mentioned, the law does not ordinarily condone acts in contravention of public policy or morals; and where it has been held that the prescription here invoked was inapplicable because the act, contract, or testament attacked was void ab initio, it has usually, if not always, been in cases where the nullity was founded in considerations of that character. Thus in Lagrange v. Barre, 11 Rob. 311, which was an action to annul a donation on the ground that the donor had parted with his entire estate, and in which it was held that the prescription of five years did not apply, the court said: "That the nullity pronounced by the article 1484 is based upon motives of good order, and that the act done in contravention of its prohibition is against good morals, can hardly be doubted, and will easily be understood." Even in such cases, however, the matter is within the control of the lawmaking department, and the exercise of its power is illustrated in the third paragraph of the article of the Code which we are now considering, under which actions in reduction of donations to the prejudice of forced heirs

are held to be prescribed, though the law providing for the legitime is, no doubt, as much a rule of public order as that which prohibits a man from giving away his entire estate.

Upon the other hand, it is well settled that where the nullity upon which the attack is based consists of defects of form, or is founded in private interest, it is condoned by the lapse of the time prescribed. Vaughan v. Christine, 3 La. Ann. 328; Calais v. Semere, 10 La. Ann. 684; Miller v. Miller et al., 32 La. Ann. 441; Heirs of Miller v. Ober, Wilds et al., 34 La. Ann. 592; Heirs of Barrow v. Barrow, 38 La. Ann. 651; Webb et al. v. Keller, 39 La. Ann. 55, 1 South. 423; Succession of Justus, 45 La. Ann. 190, 12 South. 130; Brownson v. Weeks, 47 La. Ann. 1042, 17 South. 489; Jones et al. v. Jones et al., 51 La. Ann. 643, 25 South. 368.

The exception mentioned, by virtue of which an action for nullity may be brought notwithstanding the rule of prescription, exists (1) because there is a rule to which it can be applied; and (2) because fraud, when established, cuts down everything. Considering it in its relation to the case at bar, no charge of fraud, specific or otherwise, is made either in the original or supplemental petition, as against the defendants or their author in title; and, whilst it is true that the acts with which the notary and perhaps the witnesses are charged, of themselves, constitute fraud, it is fraud imputed to them, and not to the defendants, and it is nowhere alleged or suggested that the defendants or their author were present when it was committed, or that they participated in, or were at any time cognizant of, it; nor do the plaintiffs offer any explanation of the fact that they only discovered the alleged fraud nine years or more after it had been committed, and after the death of the immediate beneficiary, who in the meanwhile had remained in undisturbed possession of the property here claimed. Under these circumstances, we agree with the judge a quo that, in so far as this might be regarded as an action to annul an existing testament, it is barred by the prescription pleaded. We do not, however, concur in the view that, upon the face of the petition, it is nothing more than an action to annul, if it can properly be so regarded at all. The declared purpose, as

we understand it, is to recover the property held by the defendants, by having it decreed that the instrument which serves as their muniment of title never existed or possessed the quality of a testamentary disposition, because, as the plaintiffs allege, the putative testatrix never, in point of fact, signed or affixed her mark to it. And for such an action the article of the Code relied on establishes no rule of prescription. If, therefore, the allegation mentioned be true, the fact alleged is sufficient, without any charge of fraud, to entitle the plaintiffs to a judgment, all other inquiry being superfluous; and, if it be untrue, all other inquiry is barred by prescription, and the plaintiffs' case is at an end.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed in so far as it maintains the plea of prescription as against the right of the plaintiffs to show that the instrument attacked, purporting to be the last will of Mrs. Mary Jane Lea, was never actually signed by her by making. her mark; and it is further decreed that in all other respects said judgment be affirmed, and that this cause be remanded to the district court, to be heard only upon the issue above stated; the costs of appeal to be paid by the defendants, appellees, and those of the lower court to await the final judgment in the case.

See concurring opinion of BLANCHARD, J., 35 South. 278.

## On Rehearing.

### (Nov. 16, 1903.)

BREAUX, J. The facts of the case not being numerous nor complicated, and having already been stated and restated, no statement of them will here be made any further than they may come up in the discussion of and passing upon the issues. If the allegations of plaintiffs' petition are true regarding the asserted will of the testatrix, that in her dying and unconscious condition she made. no will, and that, in effect, fraud and forgery were resorted to in order to make it appear that she had made a will, then there was no will at all. The testatrix, we must then infer, never made and never attempted to make a will.

The paper which was presented to the court purporting to be a last will and testament had no more value than a blank sheet. It was an asserted will which was nonexisting. It never was in esse for the reason that it did not contain evidence of any expression whatever, or the least desire of the testatrix at the time of its alleged confection. It was as completely "naught" as it is possible.

Having arrived at the conclusion that the asserted act was not an act at all at this stage of the case, but that it was purely an inexistent act which the parties propounded to be probated according to plaintiffs' petition, then it devolves upon us to determine whether or not it is subject to the prescription of five years to the extent that it is nonexistent.

There must be a difference between those acts which have no existence in fact, and those which are annullable, or subject to be treated as null. There is here no testatrix and no legatee, for it does not appear that the asserted testatrix intended to be a testatrix, or that she intended to bequeath her property to those who claim to be her legatees.

It would be against the law and public order to hold that prescription and the action of the court can give vitality to an asserted will which never existed.

But the learned counsel representing the defendants and appellees pressed upon our attention that there is no law requiring the testator, who cannot write, to affix his mark to a will, or to adopt any other substitute for his signature.

We are not inclined to take up the discussion from that point of view. It is not needful to the decision of the issues. The question is not that the alleged testatrix has failed to sign the will, but that she has made no will. The question of the signature, or the want of it, does not of itself enter into the issues of the case, in view of the fact that it relates to the utter unconsciousness in which the averred testatrix was, in regard to any will at all, and the consequent nonexisting will. While it may be true, perhaps, that the declaration of the testator that he knows not how to sign may replace the mark, or dispense with the necessity of going through the form of making his mark, it does

not supply the consent never given by the one urged to have been the testator.

The question is not one of form, subject to the prescription pleaded, but one of substance, of the most essential character in the confection of the will.

The issues before us, made up for the purpose of trial of the exception, admit that the decedent did not execute a will, and, in effect, acknowledge that it is not genuine. We think that the case should be remanded to inquire into these charges.

The wrong in this case, if as grave as alleged by plaintiffs, is not cured by prescription intended to cure relative and in some instances even absolute nullities.

The foregoing disposes of the application of plaintiffs and appellees for rehearing.

Two applications were presented for a rehearing—one by plaintiffs, the other by defendants. Plaintiffs in this application for a rehearing complain of the judgment heretofore rendered by us, on the ground that it confines plaintiffs and appellants within such narrow limits that they will be prejudiced in the prosecution of their demand. They ask that our original decree be modified so as to permit them to offer evidence in support of all their allegations in the district court which are now before us. This we must decline to do to the extent asked.

We consider that the issues are sufficiently broad to enable plaintiffs and appellants to show that the late Mrs. Lea was unconscious at the time she is said to have made a will, and that she made no will. Further than this we are not willing to go.

The defendants, we should state before closing, applied for a rehearing on the ground that our decree is erroneous, and that the case should not be remanded at all; that the issue should now be finally decided. Our decree disposes of both applications for rehearings.

It is therefore ordered, adjudged, and decreed that our decision heretofore handed down be reinstated as the judgment of this court, with the addition, as an amendment thereto, that plaintiffs and appellants shall have the right to prove that the asserted testatrix was unconscious and unable to make a will, and, because of her unconscious condition, that she never made a will.

For reasons adjudged, our judgment is reinstated and made the judgment of this court.

And it is further ordered, adjudged, and decreed that plaintiffs have the right to prove the unconscious condition of the late Mrs. Lea, and that she did not die testate.