26 So.2d 279

**LABARRE et al. v. RATEAU et al.**

No. 37110.

April 22, 1946.

See, also, 203 La. 802, 14 So.2d 642.

Bentley G. Byrnes and Joseph F. Blasi, Jr., both of New Orleans, for appellants.

Aubert L. Talbot, of Napoleonville, and Blum & Marchand, of Donaldsonville, for appellees.

HAMITER, Justice.

Originally instituted for the purpose of obtaining the cancellation of a certain notice of lis pendens affecting the title to land allegedly owned by plaintiffs, this suit was converted by the defendants into a petitory action.

The important facts of the controversy, chronologically stated, are as follows:

By a notarial act dated January 16, 1891, the asserted nullity of which incidentally is the basis for defendants' petitory action, Pierre F. V. Labarre and his wife, Euphrosine Schmidt, conveyed to Gustave and Nelson Labarre (two of their seven children) their undivided one-half interest in and to a large tract of land of about 3,200 arpents situated in the Parish of Assumption, together with, so the instrument recited, "the whole and the undivided half of the buildings, improvements, rights, ways, privileges and appurtenances thereon and thereunto attached and belonging, save and excepted however the dwelling house, kitchen & the yard, garden and say about ten arpents of land back of the

yard, which are reserved for use, and habitation of the vendors for and during their respective life time."

The instrument further provided: "The present sale is made and accepted for the following consideration. The purchasers binds and obligate themselves jointly and in solido to pay at the end of each month to the vendors, who hereby accepts the same the sum of thirty dollars during their respective life time; which amount shall be paid regularly to said vendors, the death of either one notwithstanding, the failure on the part of said purchasers to pay said thirty dollars each month for six consecutive months will ipso facto annull and cancel this sale."

The transferees, Gustave and Nelson Labarre, acquired the other undivided one-half interest from one Henry McCall under a deed of date July 18, 1893, for the price and sum of $2,449. On the same date they sold to Francis B. Williams a definite parcel (containing about 2000 arpents) of the large tract.

The approximately 1,200 arpents remaining to Gustave and Nelson Labarre was partitioned in kind by them on January 18, 1904, the latter taking that designated as lot No. 1 and the former lot No. 2.

Pierre F. V. Labarre died in 1909 and his wife, Euphrosine, in 1913.

Several years later Gustave and Nelson Labarre died, and on January 25, 1926, a suit was instituted against their children by two sisters and a nephew (child of a predeceased sister), for the purpose of annulling the transfer in 1891 from Pierre F. V. Labarre and his wife to Gustave and Nelson Labarre, the plaintiffs therein alleging that the transaction was purely a disguised donation reprobated and prohibited by law. The suit, No. 5718 on the docket of the district court of Assumption Parish, was entitled Mrs. Marie Amalie Labarre, wife of Joseph Malcolm Barlow v. Gustave J. Labarre, Jr., et al.; and in connection with its filing there was placed of record a notice of lis pendens, thereby encumbering the title to the property involved.

Thereafter some of the heirs of Gustave Labarre sold and conveyed to the following persons certain undivided interests in the property designated as lot 2, the dates and amounts of the acquisitions being set opposite their respective names: Clarence J. Savoie, September 15, 1926, one-sixth; Mrs. Hattie Grace Clifton, August 12, 1935, one-twenty-fourth; Henry Albert LeBlanc, November 26, 1940, one-twenty-fourth.

On November 4, 1935, the children and other heirs of Nelson Labarre sold and conveyed unto L. Hillory Rousseau, all of lot 1.

On June 17, 1942, an order was signed by the district judge dismissing the above mentioned suit No. 5718 (filed June 26, 1926), the attorneys for the defendants in that cause having shown the court that the plaintiffs therein had allowed more than

five years to elapse without having taken any steps in its prosecution. And on the same date the present slander of title action was instituted by some of the heirs of Gustave Labarre and by all of the above named purchasers to have cancelled the notice of lis pendens recorded in·connection with the filing of that suit (No. 5718).

Those made defendants herein, ·being the surviving plaintiff and the heirs of the two deceased plaintiffs in suit No. 5718, filed an answer on September 18, 1942, denying plaintiffs' right to full ownership of the property and alleging that the act of sale dated January 16, 1891 (under which plaintiffs claim), was "null and void for the reason that no cash consideration was paid to Pierre F. V. Labarre and Euphrosine Schmidt, his wife, the owners of an undivided interest in said property described therein." They prayed for judg-·ment recognizing them as the true and lawful owners in indivision with plaintiffs of the property in dispute. Thus the slander of title suit was converted into a petitory action.

Five days later plaintiffs pleaded specially that defendants' claim of ownership is barred by the prescriptions of five, ten and thirty years. This plea of prescription was fixed for trial for September 30, 1942.

On the last mentioned date, at the commencement of the trial of the case on the plea of prescription, defendants offered for filing a supplemental and amended answer in which they adopted all of the allegations

of their original answer, and they averred that the act of sale of January 16, 1891, was an absolute nullity for the following reasons: (1) It was a donation in disguise, intended to prefer Gustave and Nelson Labarre over the other children. (2) No consideration was given by the vendees. (3) If there was consideration for the act it was not of a serious nature nor equivalent to the value of the property. (4) The act was an attempted donation omnium bonorum.

The court ordered the filing of the supplemental answer, notwithstanding the objection of plaintiffs' counsel that it injected new issues in the cause and came too late, and proceeded to hear evidence on plaintiffs' plea of prescription. At the conclusion of this trial an exception of no cause of action was tendered on behalf of all the plaintiffs and the case submitted for decision.

Following the submission, while the court had the matter under advisement, plaintiffs filed on October 13, 1942, a special plea of estoppel in which they alleged: "That the defendants and their ancestors are estopped to deny the validity of the plaintiffs' title as set forth in their original petition in the within suit, for the reason that they have been guilty of laches and have failed to take any action to set aside the act of sale by Pierre F. V. Labarre and his wife, Euphrosine Schmidt to Gus and Nelson Labarre, dated January 16, 1891, since which time plaintiffs and their ancestors in title

have been recognized as the owners of the said property as set forth in their petition."

The court rendered and signed a judgment on November 24, 1942, in favor of the plaintiffs, decreeing them to be the owners of the disputed property in the proportions listed, and it ordered cancelled from the records of Assumption Parish the notice of lis pendens recorded in connection with suit No. 5718 (instituted in June 1926). In rendering that judgment the court sustained the exception of no cause of action of those plaintiffs who had purchased from the heirs of Gustave and Nelson Labarre, it holding them to be third party purchasers in good faith relying on an act of record not stricken with nullity by its terms. As to the remaining plaintiffs (the heirs of Gustave Labarre) the court sustained their plea of estoppel grounded on the charges that defendants were guilty of laches.

Defendants are appealing from the judgment.

First to be considered is the question of the correctness of the court's ruling in allowing the filing of the supplemental and amended answer, appellees insisting that it came too late and changed the issues of the case.

It is provided in the Louisiana Code of Practice that:

"419. Petition—Amendment after issue joined.—After issue joined, the plaintiff may, with the leave of the court, amend his original petition; provided the amendment does not alter the substance of his demand by making it different from the one originally brought.

"420. Answer — Amendment — Dilatory exceptions.—The defendant may then amend his answer, subject to the same rules, and add to it new exceptions; provided they be not of the dilatory kind. After answering on the merits, dilatory exceptions shall not be raised by way of amendment, unless with the consent of the plaintiff."

Originally the defendants herein had alleged their partial ownership of the property and had attacked the 1891 deed or transaction; asserting it to be a nullity because no cash consideration had been paid thereunder. In the supplemental answer those averments were adopted and additional reasons for the nullity of the assailed instrument were set forth. Both answers contained substantially the same prayer. Clearly by the supplemental answer defendants' original position was in no manner altered; only amplification or elaboration of the substance of the demand resulted. By permitting the filing, the district judge, we think, ruled correctly. In each of the cases relied on by appellees to sustain their objection, the rejected supplemental answer offered a defense inconsistent with that originally urged.

Although the case was tried in the district court on plaintiffs' plea of prescription, it does not appear that a ruling on that

plea was made. We conclude, however, that none of the prescriptions pleaded would defeat defendants' right of·recovery.

The five year prescription of R.C.C. Article 3542 is inapplicable to absolute nullities. Provost's Heirs v. Provost, 13 La. Ann. 574; Cox v. Lea's Heirs, 110 La. 1030, 35 So. 275; Litton v. Stephens, 187 La. 918, 175 So. 619. It is in such category that the defendants place the assailed instrument of 1891.

In support of the ten year prescription plaintiffs invoke R.C.C. Article 3544. It states: "In general, all personal actions, except those before enumerated, are prescribed by ten years." That codal provision, as its specific language indicates, relates to personal actions. Real actions, to which class defendants' demand belongs, are unaffected by it. Judson v. Connolly, 4 La.Ann. 169; DaPonte v. Ogden, 161 La. 378, 108 So. 777; Peterson v. Moresi, 191 La. 932, 186 So. 737.

As to the prescription of thirty years, plaintiffs rely upon R.C.C. Article 3548, reading: "All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years."

On several occasions this court expressed the view that Article 3548 is merely an affirmance of Article 3499 under which the ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith. Generes v. Bowie Lumber Company, 143 La. 811, 79 So. 413; Harang, et al. v. Golden Ranch Land & Drainage Company, 143 La. 982, 79 So. 768; Buckley v. Catlett, 203 La. 54, 13 So.2d 384.

In the Harang case (on rehearing) we said [143 La. 982, 79 So. 786]: "To our mind it is utterly and plainly unjuridical to· say that an owner may lose his title without some one else ipso facto eo instanti acquiring it. A title cannot remain up in the air. One party losing his title, and another party acquiring it, or one party acquiring the 'title and another party losing it, are the necessary converses of each other. It follows from this that when the Code provides the mode, and the sole and exclusive mode, by which one party may acquire title by the prescription of 30 years, it necessarily, ipso facto, provides the mode, and necessarily the sole and exclusive mode, by which the former owner may lose his title. When, therefore, articles 3499, 3500, and 3501 of the Code provide the exclusive mode in which a party may acquire title by the prescription of 30 years, they necessarily provide the exclusive mode by which a party may lose his title by the prescription of 30 years. Article 3548, which provides that the action for an immovable is prescribed by 30 years, or, in other words, that an owner loses his title by the prescription of 30 years, must therefore necessarily be read in connection with said article 3499 et seq. which provide how a party may acquire title by said prescription. The losing of the title being the mere converse of the acquisition by some one else, the affirmative as to the only mode in which

the title may be acquired by prescription of 30 years is pregnant with the affirmative of the only mode in which it may be lost."

Articles 3500 and 3501, referred to in the Harang case, state:

"3500. Adverse possession required—Essentials.—The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.

"3501. Acts evidencing intention to preserve possession.—The possession necessary for this species of prescription, when it has commenced by the corporal possession of the thing, may, if it has not been interrupted, be preserved by external and public signs, announcing the possessor's intention to preserve the possession of the thing, as the keeping up of roads and levees, the payment of taxes, and other similar acts."

Now the question is: Has the prescription of thirty years acquirendi causa accrued, thereby barring defendants' claim?

 As to the matter of possession necessary in acquiring by prescription we said in Continental Land & Fur Company, Inc. v. Lacoste, 192 La. 561, 562, 188 So. 700, 704, that: " * * * Article 3437 of the Civil Code declares that, in order for a person to take possession of an estate as owner, it is not necessary for him to pass over every part of it, but it is sufficient if he enters upon and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries. In the Leader Realty Company Case [147 La. 256, 84 So. 648] it is said that the word 'boundaries', in article 3437 of the Code, means the limits or marks of enclosure if the possession be without title, or the limits stated in the title deed if the possession be under a title. But it is not necessary for a person who takes possession of a tract of land to build a fence around it, in order to fix the boundaries of what he intends to possess, if the limits of his possession are marked by natural boundaries and if he actually possesses or uses all of the land within the boundaries. * * *"

Also pertinent to the question of possession under the thirty years prescription is the following provision of R.C.C. Article 3503: "How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it."

 In the present case the plaintiffs, on whom the burden rested, failed to prove the existence of boundaries to the property, either natural or artificial. True, their principal witness, a man of 66 years who had lived in the vicinity all of his life, testified that at one time there were certain fences and tree markings on the land in various places (most have since been destroyed). But he also said that the aver-

age person could not locate the lines, and that he could establish them only by the use of a compass.

This brings us to a consideration of the district judge's ruling on the exception of no cause of action, he having overruled it as to the plaintiffs who were heirs of Gustave Labarre and sustained it as to those who had purchased relying on the public records.

The holding as to the heirs obviously was correct in view of the averments of defendants that the transaction of 1891 was an absolute nullity.

■ Also, we agree that the exception was properly sustained as to the plaintiff purchasers, Mrs. Hattie Grace Clifton, Henry Albert Leblanc and L. Hillory Rousseau, they having acquired their interests in the years 1935, 1940, and 1935, respectively. The deed in question was not manifestly null; it was a notarial act of sale, regular in form, and recited a seemingly valid consideration. A third party purchaser in good faith could rely on its provisions. Of course, when those persons acquired there was of record the notice of lis pendens filed in 1926 in connection with the above mentioned suit No. 5718 which attacked the 1891 deed as being a donation in disguise. But at that time a period of five years had elapsed or intervened without any prosecution of the suit occurring, and they were entitled to assume that the adverse claim had been abandoned. R.C.C. Article 3519.

■ An assumption of that kind, however, was not available to the remaining plaintiff purchaser, Clarence J. Savoie. He acquired on September 15, 1926, a few months after the filing of the notice of lis pendens and within the mentioned five year period, and he was chargeable with notice of the deed's alleged invalidity. As to him, we think, the exception of no cause of action should have been overruled.

The decision in favor of those plaintiffs who are heirs of Gustave Labarre resulted from the sustaining of their special plea of estoppel founded on laches of defendants. This plea was filed while the district court had the case under advisement following a trial of the plea of prescription, and it was sustained on the evidence adduced at that trial.

■ The doctrine of laches, equitable in character and fully discussed in 30 C.J.S., verbo Equity, § 112 et seq., "is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of the matters in controversy and doing justice between the parties, and on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands." 30 C.J.S., Equity, § 113. What constitutes laches is to be determined in the light of the circumstances of the particular case. The doctrine's application is controlled by equitable considerations; it cannot be invoked

to defeat justice; it will be applied only where the enforcement of the right asserted would work injustice. 30 C.J.S., Equity, § 115. While delay in enforcing a right is an element of laches, such delay does not of itself constitute laches. The defeating of a claim by lapse of time alone comes within the province of prescription or limitations. 30 C.J.S., Equity, §§ 112 and 116a.

 The laches doctrine addresses itself exclusively to the evidentiary effect of delay. Thus, as stated in section 116b of the above mentioned authority: "Long lapse of time in asserting a claim, when unexplained, operates by way of evidence against the justice of the right asserted, and not only subjects plaintiff's case to severer scrutiny than it would otherwise receive, and exacts of him a higher degree of proof than would otherwise be required, but moves the court to look with more indulgence on the evidence adduced by defendant. Long lapse of time, if unexplained, may create or justify a presumption against the existence or validity of plaintiff's right and in favor of the adverse right of defendant; or a presumption that, if plaintiff was ever possessed of a right, it has been abandoned or waived, or has been in some manner satisfied; or that plaintiff has assented to, or acquiesced in, the adverse right of defendant; or a presumption that the evidence of the transaction in issue has been lost or become obscured, or that conditions have changed

since the right accrued; or a presumption that the adverse party would be prejudiced by the enforcement of plaintiff's claim. The presumption of laches arising from lapse of time may be rebutted and overcome by competent testimony."

 This court, in several decisions, has recognized the principle of laches, and in applying it has said in substance that a stale demand's unfavorable presumption, resulting from a long delay in the presentation or prosecution of the claim, can be overcome or removed, but only by peculiarly strong and exceptionally conclusive evidence. Bodenheimer v. Executors of Bodenheimer, 35 La.Ann. 1005; Wood v. Egan, 39 La.Ann. 684, 2 So. 191; Kuhn v. Bercher, 114 La. 602, 38 So. 468. And in each of those cases, it is noticed, the doctrine was applied after a hearing of the merits and while the court had before it all of the evidence that could possibly be produced by the proponents of the stale claim.

 In the present case no trial of the merits has yet occurred, the ruling of the district court sustaining plaintiffs' charge of laches having been predicated on the evidence adduced at the hearing of the plea of prescription. Of course, an unfavorable presumption has attached to defendants' demand herein, being the evidentiary effect of the long delay in the prosecution of the claim. But it is not a conclusive presumption; it is one rebuttable by peculiarly strong and exceptionally

conclusive evidence, and by that only. To afford defendants the right and opportunity of offering proof of that character if they can, a privilege to which they are entitled, the case should and will be remanded for a trial of its merits.

For the reasons assigned the judgment appealed from is affirmed in so far as it concerns the plaintiffs Mrs. Hattie Grace Clifton, Henry Albert Leblanc and L. Hillory Rousseau. In all other respects the judgment is reversed and set aside and the case is remanded to the district court for further proceedings according to law and consistent with the views herein expressed. Costs of this appeal shall be paid by the appellees except the three specially named in this decree. All other costs shall await the final determination of the litigation.

O'NIELL, C. J., absent.