LANDRY, Judge.
This is a petitory action instituted by plaintiff, A. B. A. Exploration Gas & Oil Company, Inc., against defendant, A. Wilbert’s Sons Lumber and Shingle Company, seeking to establish petitioner’s title and ownership of Lot 2, Section 23 and fractional Sections 24 and 25, Township 10 South, Range 11 East, Iberville Parish, which said adjacent, abutting and contiguous properties constitute a single tract of swampland containing 875.40 acres.
Defendant resisted plaintiff’s demands asserting its ownership of subject properties by purchase from a common author in title and, alternatively, by acquisitive prescription of 10 and 30 years.
After trial on the merits the lower court recognized defendant as owner of the property in dispute by virtue of a prior purchase *754 from a common ancestor in title and sustained defendant’s pleas of prescription of both 10 and 30 years. From said adverse ruling plaintiff has appealed.
In order that the issues presented by this litigation may be more readily understood it is deemed advisable to narrate, in some detail, the significant events which preceded the institution of this action.
Subject properties were acquired July 15, 1859, by Jules Lapene and August Ferre as evidenced by patents numbered 6897 and 6898 issued said parties by the State of Louisiana and duly recorded in the Conveyance Records of Iberville Parish. Jules Lapene died testate on April 6, 1889 and his succession was duly opened in the Parish of Orleans wherein he was domiciled. In said succession proceedings there appears an order dated November 18, 1889, directing the Sheriff of Iberville Parish to sell subject properties at public auction to pay the debts of said decedent’s succession. Also appearing therein is an advertisement dated November 20, 1889, giving public notice of the sale to be held December 28, 1889, which advertisement was published six times in the Weekly Iberville South, the official journal of Iberville Parish. While the advertisement in question recited the sale was to pay the debts of the Succession of decedent Jules Lapene only, it also contained the following notation: “the one-half belonging to the succession and other half belonging to August Ferre, being sold by consent.” The provisional account of the testamentary executor in the succession proceedings shows a receipt of funds in the following words: “1890, February 1, By proceeds of sale of Land in Iberville Parish $143.45.” At the trial defendant produced a check stub payable to the former Sheriff of Iberville Parish in words and figures as follows: “No. 485, Jan. 31, 1890, Capt. Chas. A. Brusle, Sheriff, full payment for Lapene tract swamp lands. $350.00.”.
Although neither the Sheriff’s proces verbal of said purported sale to defendant nor a deed issuance in pursuance thereof has been found in either the Succession records of decedent Lapene in Orleans Parish or the Conveyance Records of Iberville Parish, appellee maintains it is nevertheless entitled to be recognized as adjudicatee of subject property because of the order directing its sale, the advertisement of the property in accordance with then existing law and the receipt of the testamentary executor showing payment by defendant of the purchase price therefor. In this connection able counsel for appellee cites both codal authority and jurisprudence in support of the contention that an adjudicatee at public sale is vested with title at the moment of adjudication and the execution of a subsequent written deed is merely proof of prior adjudication. In this same connection it is argued proof of adjudication may be made by parole or secondary evidence hence defendant is entitled to establish its ownership as purchaser by virtue of the events and circumstances reflected by the proceedings had in the Lapene Succession.
Based on the foregoing premise defendant maintains, in the alternative, the events which transpired in the succession proceedings may properly constitute the foundation for its plea of 10 years acquisitive prescription which requires, inter alia, a deed trans-lative of title. In the second alternative, esteemed counsel for appellee contends defendant took immediate possession of the property in question following the alleged sale of December 28, 1889, and has maintained open, public, peaceable, uninterrupted physical and corporeal possession thereof continuously since and has therefore acquired prescriptive title by 30 years adverse possession in .conformity with LSA-C.C. Article 3499.
Appellant, however, deraigns its title to subject property by virtue of the purchase of an undivided one-half interest therein from the heirs of Jules Lapene on May 1, 1961, said heirs having been recognized as owners and placed in possession of said decedent’s estate by judgment of possession rendered March 2, 1961, and the purchase of the other undivided half from the heirs of *755 August Ferre by deed executed May 3, 1961, said latter heirs having been recognized as owners and placed in possession of the estate of said Ferre by judgment of possession rendered in said decedent’s succession February 4, 1960.
Plaintiff maintains defendant cannot rely on the strength of a purported adjudication inasmuch as there is no evidence of a proces verbal or deed from the Sheriff of Iberville Parish to appellee. On this assumption the following arguments are advanced: (1) defendant has no record title and therefore no claim to the property in dispute based on purchase from an owner; (2) having no color of title, defendant is a “squatter” and bears the burden of proof contrary to the general rule that plaintiff in a petitory action must rely on the strength of his own title and may not depend on the weakness of his adversary’s title; and (3) defendant may not plead prescription of 10 years in view of its failure to establish possession pursuant to a deed translative of title. With respect to appellee’s plea of thirty years prescription appellant contends defendant has failed to establish possession of subject property continuously for a period of thirty years as required by LSA-C.C. Article 3499.
After careful consideration of the voluminous record compiled in the trial of this cause, we are convinced our learned brother below properly sustained defendant’s plea of thirty years prescription as will hereinafter appear.
The law and jurisprudence of this state is settled beyond doubt that ownership of immovable property may be acquired by prescription of thirty years notwithstanding a lack of title or possession in good faith. LSA-C.C. Article 3499.
The possession on which the thirty year prescription provided for in L.S.A.-C.C. Article 3499 is founded, must be continuous, uninterrupted during the prescribed period; it must be public, open and under the title of owner. LSA-CC. Article 3S00.
With respect to the thirty years prescription set forth in LSA-C.C. 3499, good faith on the part of the possessor is immaterial. Hostile possession adverse to the record owner may serve as the basis for thirty years prescription consequently even a “squatter” may prescribe against the true owner if permitted to remain in open, continuous, uninterrupted possession of property for thirty years. LSA-C.C. Article 3499; Theriot v. Bollinger, 172 La. 397, 134 So. 372.
The possession contemplated by LSA-C.C. Article 3500 must commence with actual, physical, corporeal possession of the property which the party pleading such prescription seeks to acquire. Menefee v. Arkansas Louisiana Gas Co., La.App., 141 So.2d 58.
Possession necessary to sustain a plea of thirty years prescription, once commenced by corporeal possession of the property claimed, may, if not interrupted, be preserved and continued by external and public signs indicative of the possessor’s intent to preserve his possession, such as the maintaining of roads and levees, payment of taxes and other similar acts. LSA-C.C. Article 3501. In such instances civil possession is sufficient to prescribe so long as there remain on the property any vestiges of works erected by the possessor, as, for example, the ruins of a house. LSA-C.C. Articles 3501, 3502; Hill v. Richey, et al., 221 La. 402, 59 So.2d 434.
In countering defendant’s plea of thirty years prescription, appellant makes two principal arguments, namely, that defendant’s possession has not been continuous and uninterrupted and defendant has failed to establish possession within visible boundaries consisting of “enclosures” maintained during the requisite period and sufficient in nature to give open and public notice of adverse possession. In this latter regard it is particularly contended there are no boundary markings whatsoever between subject property and adjacent property to the west *756 acquired by defendant by patent from the State of Louisiana.
The record before us clearly establishes the property in dispute is swamp land which, until recent years, has been subject to periodic, if not annual, overflow. Until about the year 1932 its chief, if not sole value, was in the growing of timber. Since 1932, it has achieved some mineral value. From its acquisition by Lapene and Ferre in 1859, until 1890, it was annually assessed in the name of said'owners. The 1890 assessment roll, however, bears the following insertion with respect to the owners as reflected on the assessor’s records: “Now A.W.L. & S. Co.”. Commencing with the assessment roll for 1891, to the present time, the lands have been continuously assessed to and the taxes thereon paid by defendant.
Following its alleged “purchase” of the property on December 28, 1889, defendant by written agreement with one Valsin Fon-tenot dated October 17, 1892, contracted for the cutting of the timber on the property involved herein. In 1893, the property was surveyed for defendant by J. C. Kleinpeter, Surveyor, who marked the lines excepting the western boundary of Lot 25 which adjoined on the east Lot 26, which latter property had been acquired by defendant prior to defendant’s alleged purchase of subject property on December 28, 1889. In 1898 defendant entered into a contract with one Emile Cannon for the cutting of the timber on the lands in controversy. Other contracts were executed by defendant for cutting timber on the subject property as follows: October 19, 1916, with one Gus Hornsby; October 6, 1920, with Gus Hornsby and Arthur Guillory; and 1931, a verbal agreement with Arthur Guillory. The amount of timber cut pursuant to these agreements is not available as defendant’s records covering these periods have been lost or destroyed. However, from 1932, to date of institution of suit, defendant produced its records showing the precise amount of timber cut on subject properties by numerous loggers for defendant in the years 1932-1938, inclusive, 1940, 1947, 1949, 1951-1953, inclusive, 1957, 1958, 1961 and 1963. Mineral leases were granted by defendant covering the lands as follows: To Shell Petroleum Corporation on March 15, 1935; California Company, December 20, 1937; L. C. Bristow, January 20, 1949, and January 18, 1952; and Placid Oil Company, July 7, 1961.
Plaintiff concedes the record contains evidence of defendant’s possession from 1890 to 1917 and from 1932 to date of filing suit in 1961, but maintains defendant has failed to establish continuous possession for 30 years inasmuch as there is a break or gap in appel-lee’s possession between 1917 and 1932. The argument is in effect that the period between 1890 and 1917 is only 27 years and that between 1932 and 1961 is only 29 years consequently defendant did not have the required 30 years possession either prior or subsequent to the aforesaid alleged quiescent 15 year intervening period and since the interrupted periods cannot be tacked on defendant’s plea of thirty years prescription must fail. Contrary to appellant’s said contention, however, the record shows positive evidence of timber cutting by appellee on subject property during the 1920s. As previously shown, appellee granted a timber cutting contract on the property in question to Hornsby and Guillory on October 6, 1920. Walter Marioneaux, 58 years of age at the time of trial, President of Iberville Parish ■Police Jury for a period of 17 years, testifying on behalf of defendant, stated he had been engaged in logging in Iberville Parish for more than 40 years. The witness further averred he was familiar with subject properties and recalled logging operations thereon by Hornsby for defendant in the 1920s. In more recent years Marioneaux himself logged the property under contract with defendant.
Irrespective of the possession attested by Marioneaux, we are convinced the record contains ample proof of the existence of external and public signs sufficient to preserve defendant’s physical possession acquired prior to 1920. It is undisputed defendant paid the taxes due on the property from 1891 continuously to date. The bound *757 aries of the property as blazed and marked by Kleinpeter in 1893, and as reblazed and remarked from time to time by defendant’s employees and those cutting timber thereon pursuant to the several contracts executed by defendant, also constitute external signs of possession. In addition, there is considerable evidence of ancient posting of the property by defendant by attachment of signs to trees particularly to certain corners which it is unnecessary to specifically mention. Numerous owners of adjoining small tracts testified unequivocally that for periods ranging from a few years to as many as 50 or 60 years previous (depending upon their respective ages) the property in question was known as Wilbert’s lands and respected as such by all persons living in the vicinity.
Appellant finally contends defendant has not established sufficient possession to maintain the plea of thirty years prescription because appellee has failed to show possession within visible boundaries consisting of fixed “enclosures” maintained during the requisite period. This argument in essence is dual in nature. First it is contended the property was not fenced or otherwise enclosed and, secondly there were no boundary markings whatsoever (such as blazes or surveyor’s marks) indicating the line between subject properties and the adjacent property to the west acquired by defendant by patent from the State prior to the date of defendant’s purported purchase of the property in dispute.
The cases relied upon by appellant as authority for the proposition that the word “enclosure” as used in the jurisprudence relative to acquisition by thirty years prescription means a visible fence or wall are clearly without application to the case at bar.
It is well established that the term “enclosure” insofar as concerns the issue before the Court, is any separation or natural or artificial mark or boundary giving notice to the public and which fix with certainty the limits of the property intended to be possessed. Thus in Hill v. Richey, 221 La. 402, 59 So.2d 434, we note and cite with approval the following applicable language of our State Supreme Court:
“What the court means by ‘enclosures’, as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means ‘enclosed only by a fence or wall’ would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code, as we have hereinabove pointed out, and would lead to absurd consequences in some cases.”
Also apropos the instant case is that line of jurisprudence establishing the principle that corporeal possession necessary to support the plea of thirty years acquisitive prescription is determined in each instance by the use to which the land is destined by its nature. What is essential for actual possession varies with the character of the property. Hill v. Richey, supra. In cases of this nature swamp land may be possessed by the cutting of timber and the granting of mineral leases thereon. South Louisiana Land Co. v. Riggs Cypress Co., 119 La. 193, 43 So. 1003; King et al. v. Board of Commissioners for Atchafalaya Basin Levee District, La.App., 148 So.2d 138.
Appellant cites Labarre v. Rateau, 210 La. 34, 26 So.2d 279, to the effect that in cases involving swamp lands, thirty years acquisitive possession is not shown unless the claimant establishes the existence of boundary lines which can be located by the average person without the use of a compass. In this regard, appellant produced as *758 a witness one Jerome H. Summers, a consulting forester, who testified the boundaries of subject property were not marked adequately. In essence Summers deposed the markings noted were short of his concept of an ideal marking consisting of blazes or other appropriate signs at intervals of 30 feet around the perimeter of the property. Summers conceded that the criteria referred to was the ideal rather than customary method of marking boundaries in swamps. However, E. P. Hargrove, Surveyor, and Frank Bennett, forester, called on behalf of defendant, testified unequivocally they ran the lines of the entire property (saving the western boundary) and found the lines were well marked and had been so for many years. Numerous lay witnesses called by defendant testified in substance the lines along the eastern and northern boundaries were properly designated by markings renewed from time to time.
Excepting Lot 2, subject properties are bounded on the south by a navigable stream known as Upper Grand River. The evidence is clear beyond doubt defendant possessed to this natural boundary and in addition posted and reposted the land along this waterway from time to time. Such a natural and visible boundary needed no further identification.
Since appellee owned the lands adjoining subject properties on the west it was unnecessary to mark or identify the western extremity of the lands in dispute. Under such circumstances marking said boundary would have served no useful purpose inasmuch as the record herein reveals defendant’s continuous possession of both subject property and defendant’s other lands lying to the west thereof. Moreover, it is settled law that the requirement of acceptably marked boundaries is directly related to the nature of the land involved, the interpretation thereof being not so strict with respect to swamp lands as it is with regard to property in agricultural areas. Hill v. Richey, supra; Jacobs v. Southern Advance Bag & Paper Co., 228 La. 462, 82 So.2d 765.
In summary we find defendant herein exercised uninterrupted and public possession of subject property in every manner in which it was susceptible of being possessed. We further find the boundaries (excepting the natural boundary mentioned) were duly and properly marked in the only manner whereby swamp lands subject to frequent overflow can be feasibly identified. *
We find no merit in the contention the evidence indicates some of the boundary markings were made by owners of adjoining small tracts and not by defendant therefore defendant may not rely on such markings. Assuming, arguendo, the foregoing to be true, it nevertheless remains the boundaries were marked. If such markings were made by adjoining owners it only serves to establish they knew, recognized and respected the boundaries.
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.