472 So.2d 223 (1985)
Milton OSBORNE, Jr.
v.
Jesse N. STONE, Jr., Individually, etc., et al.
No. CA 84 0517.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
*224 Milton Osborne, Jr., Baton Rouge, for plaintiff-appellant Milton Osborne, Jr.
David G. Sanders, La. Dept. of Justice, Baton Rouge, for defendant-appellee Jesse N. Stone, Jr., individually & as president of the Southern University System: B.K. Agnihotri, individually & as Dean of Southern University School of Law & the Southern University Bd. of Suprs.
Before GROVER L. COVINGTON, C.J., and COLE, CARTER, LANIER and JOHN S. COVINGTON, JJ.
CARTER, Judge.
This is a suit by a tenured university professor for a declaratory judgment defining his employment status, reinstatement to his former position of employment, and all backpay, allowances, benefits and other emoluments of office. Defendants[1] filed an "exception" of laches. After an evidentiary hearing, the trial court rendered judgment sustaining the exception of laches and dismissed the suit. This devolutive appeal followed.

FACTS
In August of 1971, Milton Osborne, Jr. became employed as a professor of law at Southern University School of Law. He acquired tenure in 1975. Because of a policy of the American Bar Association about faculty members not working full time in the law school, Dean B.K. Agnihotri of the Southern Law School began sending out a letter to all faculty members to ascertain their availability to teach on a full-time basis. After 1975, this letter of availability was customarily sent out every year to each faculty member.
On May 9, 1980, at a faculty meeting, a letter of availability was given to each faculty member requesting formal notice of availability to teach for the 1980-81 academic year. A reply was requested by May 16, 1980. Mr. Osborne was present at this meeting. When Mr. Osborne failed to timely communicate his intentions, Dean Agnihotri again requested notice of his availability to teach. Mr. Osborne was given until May 23, 1980, to respond, and, if no response was received by that date, it would be assumed that he was not available to teach. No response was received, and, by letter dated July 21, 1980, Dean Agnihotri informed Mr. Osborne that he would not be recommended as a member of *225 the law faculty for the 1980-81 academic year.
By letter dated July 30, 1980, Mr. Osborne answered Dean Agnihotri's letter as follows:
Receipt of your letter of July 21, 1980 in which you disclosed an expression of intent not to recommend my appointment to the Law School Faculty for the 1980-81 academic year, is hereby acknowledged. Please be advised that I intend and expect that there would be no involuntary interruption of my employment as a tenured faculty member of the Southern University School of Law unless and until there has just been a finding of just cause after due deliberations and proceedings are had and made definitive.
I shall reserve my right to timely accept, reject or seek modification of my presumptively continuous tenured appointment as a member of the law school faculty only after having had a reasonable opportunity to thoroughly consider the terms and conditions of the appointment for the 1980-81 academic year.
Mr. Osborne was not assigned any classes, and he did not teach or attempt to teach in the 1980-81 academic year. Instead, two individuals were hired to replace Mr. Osborne and to teach his courses. Dean Agnihotri acknowledged that tenured professors are normally on continued appointment, but considered Mr. Osborne's nonavailability for the 1980-81 academic year as a resignation (and not a termination).[2] At that time, Mr. Osborne did not request a hearing on the matter.
When preparing faculty recommendations for the 1981-82 academic year, Dean Agnihotri, by letter dated June 23, 1981, requested advice from Jesse N. Stone, Jr., the President of Southern, concerning the status of Mr. Osborne. By letter dated July 7, 1981, Mr. Robert Williams, counsel for Mr. Osborne, advised Dean Agnihotri of his client's availability to teach for the 1981-82 academic year. President Stone responded by letter dated August 3, 1981, informing Mr. Osborne that his abandonment of his job for one full academic year constituted a resignation. By letter dated November 21, 1981, Mr. Williams formally requested the Board of Supervisors of Southern University to review Mr. Osborne's case. On November 12, 1982, Mr. Osborne filed the present suit.

DOCTRINE OF LACHES
Laches is an equity doctrine of the common law that is without statutory (codal) basis in Louisiana. It has been engrafted jurisprudentially into our law to a limited degree. However, that jurisprudence is somewhat confused. State ex rel. Guste v. Estate of Himbert, 327 So.2d 698 (La.App. 1st Cir.1976), writs denied, 330 So.2d 308, 311 (La.1976). Because laches is an equity doctrine, Louisiana courts can only use it in the absence of express law. La.C.C. art. 21; Terrebonne Parish Police Jury v. Kelly, 428 So.2d 1092 (La.App. 1st Cir.1983). For example, laches is not applicable to bar a suit solely on the basis of the passage of time where the statutory law has established a prescriptive period.[3]Corbello v. Sutton, 446 So.2d 301 (La. 1984); Munson v. Martin, 249 La. 925, 192 So.2d 126 (1966); Succession of Picard, 238 La. 455, 115 So.2d 817 (1959). However, laches can provide a defense when other factors, coupled with the passage of time, are present.
The doctrine of laches has been applied to claims by public employees for reinstatement. In Williams v. Livingston Parish School Board, 191 So. 143, 144-145 (La.App. 1st Cir.1939), appears the following:
Sound public policy requires that an employee of a public body who claims to *226 have been illegally discharged should press his claim for reinstatement with diligence and without unnecessary delay. The rule that laches on the part of such public employee will bar his claim for reinstatement is not based on any law of prescription or limitation of actions, but it arises from reasons of public policy. The processes of government must go on and employees and officials must be paid out of public revenue for carrying on the functions of government. Where a discharged employee sits idly by for an unreasonable length of time without pressing his claim for reinstatement, those charged with the duty of securing the necessary working personnel cannot hold up the administrative functions of government awaiting a decision on the part of the discharged employee as to what course he will take. The prevention of duplication of positions and the payment of double salaries requires such discharged employee, not only to press his demands, but also to submit his claim to the courts for adjudication without unnecessary delay.
See also Fields v. Rapides Parish School Board, 231 La. 914, 93 So.2d 214 (1957) and Doyal v. Bossier Parish School Board, 340 So.2d 392 (La.App. 2nd Cir.1976). To successfully invoke the doctrine of laches to unprescribed claims by a public employee, a public entity must prove (1) unreasonable delay by the employee in presenting his claim, and (2) substantial prejudice to or upset of the public's fiscal affairs. Bradford v. City of Shreveport, 305 So.2d 487 (La.1974); Stansbury v. City of Opelousas, 341 So.2d 33 (La.App. 3rd Cir.1976), writ refused, 343 So.2d 197 (La. 1977). The application of the doctrine of laches is within the discretion of the trial court, and each case must be decided on its own facts and circumstances. Molero v. Bass, 322 So.2d 452 (La.App. 4th Cir.1975), writ denied, 325 So.2d 609 (La.1976).
Mr. Osborne contends that laches is an affirmative defense which can only be determined after a trial on the merits and that it was error to decide its applicability on the trial of an exception. The appellees contend laches can properly be raised by way of an exception.
LSA-C.C.P. art. 927 provides that the objections which may be raised through the peremptory exception include, but are not limited to the five enumerated objections set forth in that article. The note to art. 927 provides: "The list is illustrative, not restrictive." The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent or barred by law, and hence the exception tends to dismiss or defeat the action. LSA-C.C.P. art. 923.
The jurisprudence has treated the doctrine of laches as both an exception and as an affirmative defense. In Bradford v. City of Shreveport, supra, Munson v. Martin, supra, Labarre v. Rateau, 210 La. 34, 26 So.2d 279 (1946), Stansbury v. City of Opelousas, supra, Doyal v. Bossier Parish School Board, supra, and Kachelmyer v. Ames, 335 So.2d 525 (La.App. 1st Cir.1976), laches was treated as an affirmative defense to be heard on the merits. In Corbello v. Sutton, supra, Succession of Picard, supra, and Williams v. Livingston Parish School Board, supra, laches was asserted by an exception, but the exception was referred to and decided on the merits. In Molero v. Bass, supra, the court ruled laches could be determined after an evidentiary hearing on an exception pleading laches or on the merits of the case. In Barnett v. Develle, 289 So.2d 129 (La.1974), Miller v. East Ascension Telephone Company, Inc., 331 So.2d 182 (La.App. 1st Cir.1976) and Albritton v. Union Parish School Board, 307 So.2d 676 (La.App. 2nd Cir. 1975), writs denied, 310 So.2d 844 (La. 1975), laches claims were heard on exceptions. (In Barnett and Miller, the exceptions were overruled, and, in Albritton, the exception was sustained.)
Whether laches may be raised by objection as a peremptory exception or whether laches constitutes an affirmative defense on the merits must be determined on a case by case basis.
*227 On May 9, 1980, plaintiff was made aware of the reasonable requirement that he make known his availability to teach for the 1980-1981 academic year. The chronology of events thereafter clearly demonstrated plaintiff's intention to abandon his position, not withstanding his letter of July 30, 1980.
After reviewing the jurisprudence, we believe the views expressed in Barnett v. Develle, supra, Miller v. East Ascension Telephone Company, Inc., supra, and Albritton v. Union Parish School Board, supra are the most persuasive for the case sub judice.
It is apparent from the record that unreasonable delay has occurred in presenting a claim for public employment and substantial prejudice to the public body will result from this delay. Therefore, plaintiff's claim should be barred by the effect of reason and law. In the case sub judice, laches is an objection properly raised by peremptory exception, and the plaintiff's claim was properly disposed of by that procedural device.[4]
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court sustaining the exception pleading the objection of laches is affirmed at appellant's costs.
AFFIRMED.
COLE, J., dissents for reasons assigned.
LANIER, J., dissents and assigns reasons.
COLE and LANIER, Judges, dissenting.
We do not agree that laches is properly the subject of an exception. The Code of Civil Procedure clearly demonstrates laches is an affirmative defense.
La.C.C.P. art. 921 defines an exception as follows:
An exception is a means of defense, other than a denial or avoidance of the demand, used by the defendant, whether in the principal or an incidental action, to retard, dismiss, or defeat the demand brought against him. [Emphasis added].
The functions of the three exceptions are described in La.C.C.P. art. 923 as follows:
The function of the declinatory exception is to decline the jurisdiction of the court, while the dilatory exception merely retards the progress of the action, but neither exception tends to defeat the action. The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action.
Laches does not "decline the jurisdiction of the court" and does not "retard[s] the progress of the action" and, thus, cannot be an objection under the declinatory and dilatory exceptions. If laches is the subject of an exception, it must be an objection under the peremptory exception. However, laches, if established, does not declare the plaintiff's action legally nonexistent or barred by effect of law. As correctly observed in the majority opinion, laches is based on an unreasonable delay which causes substantial prejudice and must be decided on the merit facts of each case. Thus, in Kachelmyer v. Ames, 335 So.2d 525, 528 (La.App. 1st Cir.1976), this court observed as follows:

*228 The doctrine of laches addresses itself exclusively to the evidentiary effects of delay. The doctrine should not be applied until after a hearing on the merits so that the Court may have before it all the evidence which could be produced by the proponents of the claim. Labarre v. Rateau, 210 La. 34, 26 So.2d 279 (1946). Travelers' plea of laches does not provide a basis for dismissing appellant's suit before a trial on the merits.
An affirmative defense raises new matter which, assuming the allegations in the petition are true, constitutes a defense to the action and will defeat the plaintiff's demand on its merits. La.C.C.P. art. 1005; Webster v. Rushing, 316 So.2d 111 (La. 1975); Modicut v. Bremer, 398 So.2d 570 (La.App. 1st Cir.1980). Article 1005 provides as follows:
The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.
[Emphasis added].
Official revision comment (e) for Article 1005 provides, in pertinent part, as follows:
Certain common law concepts enumerated as affirmative defenses in Fed.Rule 8(c), such as accord and satisfaction, laches, license, and waiver, have been recognized and adopted in varying degrees by the jurisprudence of Louisiana. They have not been expressly included in the enumeration although to the extent that these concepts are recognized in our jurisprudence they are included within the omnibus phrase `any other matter constituting an affirmative defense.'

[Emphasis added].
Official revision comments (a) and (e) show that Article 1005 is based on Federal Rule 8(c). Federal Rule 8(c) provides as follows:
AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation. [Emphasis added].
It is well settled in federal jurisprudence that laches is an affirmative defense. Moore v. Tangipahoa Parish School Board, 594 F.2d 489 (5th Cir.1979); United States v. One (1) 1963, Hatteras Yacht Ann Marie, 584 F.2d 72 (5th Cir.1978). It is well settled in Louisiana jurisprudence that when a Louisiana procedural rule is based on a federal procedural rule, federal decisions provide guidance and persuasive precedents for interpreting the Louisiana rule. Parish National Bank v. Lane, 397 So.2d 1282 (La.1981); Cf. State v. Bradford, 367 So.2d 745 (La.1978).
Laches is an affirmative defense. New Orleans Firefighters Association Local 632 v. City of New Orleans, 263 La. 649, 269 So.2d 194 (1972). The applicability of laches can only be determined after a trial on the merits when the facts supporting a plaintiff's claim can be compared with the reasons for any delay in asserting the claim and the resulting prejudice, if any, to a defendant. Laches is not properly the subject of an exception and should not have been disposed of by that procedural device.
*229 We respectfully dissent. We are saddened that our brothers in the majority have chosen to sacrifice the clear meaning of our Code of Civil Procedure on the altar of expediency.
NOTES
[1] Jesse N. Stone, Jr., the President of the Southern University System; B.K. Agnihotri, Dean of the Southern University School of Law; and the Board of Supervisors of Southern University.
[2] See, for example, Kalme v. West Virginia Board of Regents 539 F.2d 1346 (4th Cir.1976) and Akyeampong v. Coppin State College, 538 F.Supp. 986 (D.Md.1982), aff'd, 725 F.2d 673 (4th Cir.1983).
[3] Where no definitive period for an appeal is established, the appeal must be taken within a reasonable time. Nelson v. State Board of Education, 366 So.2d 948 (La.App. 1st Cir.1978), writ denied, 368 So.2d 142 (La.1979).
[4] See Bradford v. City of Shreveport, 305 So.2d 487 (La.1974); Barnett v. Develle, 289 So.2d 129 (La.1974); State ex rel. McMurray v. Orleans Parish School Board, 185 La. 502, 179 So. 834 (1938); State ex rel. Koehl v. Sewerage and Water Board of New Orleans, 179 La. 117, 153 So. 533 (1934); Spillman v. City of Baton Rouge, 417 So.2d 1212 (La.App. 1st Cir.1982); Devillier v. City of Opelousas, 247 So.2d 412 (La.App. 3rd Cir.1971); and State ex rel. Wiltz v. Sewerage and Water Board of New Orleans, 145 So. 34 (La.App.Orl.Cir.1932). See also Fields v. Rapides Parish School Board, 231 La. 914, 93 So.2d 214 (1957); Williams v. Livingston Parish School Board, 191 So. 143 (La.App. 1st Cir.1939); and Fontenot v. Evangeline Parish School Board, 185 So. 104 (La.App. 1st Cir.1938).