**Albert P. KALME, Appellant,**

v.

**The WEST VIRGINIA BOARD OF REGENTS, a corporation, et al., Appellees.**

No. 75–2321.

United States Court of Appeals, Fourth Circuit.

Submitted June 11, 1976.

Decided Aug. 16, 1976.

Robert L. Baughan, Charleston, W.Va., on brief, for appellant.

Jack L. Hickok, Kaufman & Ratliff, Charleston, W.Va., on brief, for appellees.

Before CRAVEN and RUSSELL, Circuit Judges, and KUNZIG, Judge, United States Court of Claims.*

CRAVEN, Circuit Judge:

Professor Kalme sued the West Virginia Board of Regents and the president of West Virginia State College, contending that he was deprived of a tenured professorship without due process of law. The district court granted summary judgment on behalf of defendants, and we affirm.

Kalme was first employed as an instructor at West Virginia State College in 1965; he was granted tenure on August 25, 1969, and promoted to the rank of associate professor. During the 1972–73 academic year Kalme was on leave of absence from the college in order to complete research for his doctoral thesis. During this time he taught at the Interamerican University in Puerto Rico.

West Virginia State officials heard nothing from Kalme regarding the progress of his research or his plans, if any, to return to his position. Accordingly, on March 6, 1973, the dean of instruction wrote to Kalme inquiring what his intentions were. On March 16, having received no reply, the dean wrote again, enclosing a copy of his March 6 letter and emphasizing that the college had to know of Kalme's plans so that appropriate personnel decisions could be made.

This letter crossed in the mails with Kalme's of March 15, in which he expressed his intention to return to West Virginia State for the fall semester of the 1973–74 school year. Additional correspondence between the two followed, primarily concerning Kalme's progress toward his doctoral degree.

* Sitting by Designation.

As early as March 1, 1973, Kalme was assured of reappointment to his teaching position at the Interamerican University. Interamerican offered Kalme a contract for 1973–74 on May 22, 1973; he accepted it and returned it signed on May 31. On June 16, 1973, however, Kalme also signed and returned a contract offered by West Virginia State for the same 1973–74 school year. Since it is impossible to be in West Virginia and Puerto Rico at the same time, Kalme put himself in a position where breach of one or the other contracts could not be avoided. West Virginia State and Interamerican, however, were kept conveniently ignorant of Kalme's conflicting contractual obligations. In addition, West Virginia State was forced to release a promising young instructor in order to make room for Kalme's return to the faculty.

With no explanation or notice whatever to anyone, Kalme failed to appear at West Virginia State to resume his teaching duties there. He was absent without permission from a mandatory departmental workshop on August 25, and when classes resumed on August 30 other faculty members were required to teach Kalme's students.

The day classes began, August 30, 1973, the president of the college received a letter from Kalme in which he requested an extension of his leave of absence in order to complete his doctoral program at the University of Ottawa.[1] Kalme made no reference to his teaching contract.

The president responded on September 4, informing Kalme that the school "no longer considers you in the employment of West Virginia State College or in an official leave capacity." At a faculty hearing held on December 14, 1973, with Kalme and his attorney present, the president's decision was affirmed. After the Board of Regents declined to reinstate him, Kalme filed suit.

After the above-stated facts had been essentially agreed to by the parties and brought to the attention of the district court, summary judgment was granted in favor of the defendants. We agree with the district court that there were no material facts shown to be in dispute, and our only remaining concern is whether the defendants are entitled to judgment as a matter of law.

■ The Constitution protects individuals against deprivation by the State of their liberty or property without due process of law. U.S.Const., Amends. V, XIV. The employment rights of a tenured professor constitute a sufficient "property interest" to warrant due process protection. *Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Slochower v. Bd. of Educ.*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). And had the college here attempted to deprive Kalme of his position in violation of the terms of his tenure agreement or in a manner repugnant to the Fourteenth Amendment or other constitutional guarantees, then we would not hesitate to reverse the grant of summary judgment and remand for a trial on the merits. But that is not this case.

■ The State, through the college president and the Board of Regents, took no action against Kalme; the government did nothing to him; nor did it seek to deprive him any property or liberty interest. To the contrary, the college was quite willing to have him return and signed a contract to accomplish precisely that. The conduct which led to Kalme's loss of employment and tenure rights was initiated by Kalme himself. The Fourteenth Amendment does not protect citizens against the voluntary, unilateral relinquishment of known rights. Kalme intentionally and flagrantly violated his contract of employment with the college, and it was upon this contractual relationship that any "property interest" depended. By failing to appear for work pursuant to the terms of his agreement, Kalme

1. A letter subsequently received from the dean of the education department at the University of Ottawa noted that "Mr. Albert Kalme has never been in full-time residence . . . . . His thesis topic has never been officially accepted nor has his advisor . . . received any acceptable proposal."

abandoned his rights under it. The president's letter of September 4 was merely an acknowledgement of the facts as they existed: Kalme was gone and would not be coming back.

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made by public agencies. . . . In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Bishop v. Wood*, —— U.S. ——, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

█ Even if we presume that Kalme was still entitled to have the college jump through appropriate hoops of procedural due process, his "dismissal" still raises no constitutional objection. The president's letter informed Kalme that the reason for his termination was his "clear violation of your contractual agreement to perform the assigned professional teaching responsibilities here . . . ." Although the letter did not inform Kalme of his right to demand a hearing, this oversight was not prejudicial, for he already knew of this right and immediately exercised it. The proceedings of the Faculty Hearing Committee, moreover, comported in all respects with the requirements of due process. Kalme's termination and loss of tenure were ratified by the hearing panel and reaffirmed by the Board of Regents. We therefore agree with the district court's conclusion that "the plaintiff doesn't have any case." The grant of summary judgment in favor of the defendants will be

*AFFIRMED.*