536 So.2d 473 (1988)
Milton OSBORNE, Jr.
v.
Jesse N. STONE, et al.
No. 87 CA 1158.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
Writ Denied February 17, 1989.
*474 Richard J. Dodson, Baton Rouge, for plaintiff-appellee Milton Osborne, Jr.
David G. Sanders, Dept. of Justice, Baton Rouge, for defendants-appellants Jesse N. Stone, Jr., et al.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Milton Osborne, Jr. (plaintiff), was hired as a law professor at Southern University School of Law in 1971. He acquired tenure in 1975. Since 1975, Southern has experienced accreditation difficulties with the American Bar Association (ABA). One problem area specified by the ABA was the practice of law by Southern's full-time faculty members during the academic year, in prohibition of Rule 402(B) of the ABA Standards For Approval of Law Schools. In 1975, Southern began sending letters routinely to its law professors asking that they "communicate their availability" to teach full-time in the upcoming academic year. Plaintiff had received such letters in the past and responded. On May 9, 1980, he received such a letter from Bhishma K. Agnihotri, dean of the Southern University School of Law, at a faculty meeting.
When plaintiff did not respond to the May 9, 1980, letter, Agnihotri sent a letter to him by certified mail, return receipt requested,[1] stating that if no response was received by May 23, 1980, it would be assumed plaintiff was not available. After receiving no response from plaintiff, Agnihotri sent plaintiff a letter which stated, in part, "please be informed that your name is not being recommended as a member of the law faculty for the year 1980-81."
On July 30, 1980, plaintiff wrote Agnihotri, in part:
[p]lease be advised that I intend and expect that there would be no involuntary interruption of my employment as a tenured faculty member of the Southern University School of Law unless and until there has just been a finding of just cause after due deliberations and proceeding (sic) are had and made definitive.
I shall reserve my right to timely accept, reject or seek modification of my presumtively (sic) continous (sic) tenured appointment as a member of the law school faculty only after having had a reasonable opportunity to throughly (sic) consider the terms and conditions of the appointment for the 1980-81 academic year.
On May 9, 1980, plaintiff and Janice G. Clark entered into a written partnership agreement to practice law in Baton Rouge.
On August 25, Southern notified plaintiff that his office had been assigned to another law professor. Plaintiff never showed up to teach classes. He testified that he called a few people at the school to talk about the situation but never called Agnihotri. He vaguely recalled going out to Southern to check and see whether he had gotten any assignments. Southern hired two professors for the 1980-81 academic year to teach plaintiff's classes, at a total cost of $71,000.00. During that period, plaintiff considered himself on unpaid sabbatical leave. He testified he believed the situation would be handled this way after talking to Lionel Johnson of the Southern University Board of Supervisors, but he never applied for sabbatical leave.
Plaintiff hired a lawyer, Robert C. Williams, in August or September, and they both testified that throughout the next year they engaged in informal attempts to resolve the situation by talking with various members of the Southern University Board of Supervisors. After a July 6, 1981, meeting with Jesse N. Stone, Southern's president, and a follow-up letter by Williams to Agnihotri intended to serve as notice that plaintiff was now available to teach, Stone wrote Williams on August 3, 1981. This letter stated in part: "As indicated *475 to you in our conversation, the Dean is of the opinion that Mr. Osborne's abandonment of his job for a period of one full academic year under the circumstances here present is inexcusable and amounts to a resignation." On November 12, 1981, Williams made formal demand on Lionel Johnson, chairman of the Southern University Board of Supervisors, for a hearing. No hearing was ever held. On November 12, 1981, plaintiff filed suit for "Declaratory Judgment and Other Relief" against Jesse N. Stone, Jr., individually and as president of the Southern University System; B.K. Agnihotri, individually and as dean of Southern University School of Law; and the Southern University Board of Supervisors.
Defendants filed an exception of laches and lack of diligence which the trial court sustained, and it dismissed plaintiff's suit. Plaintiff took a devolutive appeal to this court which, in a 3-2 decision, affirmed the trial court, 472 So.2d 223. The Supreme Court then granted a writ, holding:
Granted. The contention of laches may not be raised by exception; assuming without deciding that laches is available in Louisiana, it may be urged only as an affirmative defense. See LSA-C.C.P. art. 1005, Comment (e). The judgments of the trial court and Court of Appeal are vacated and the case is remanded for further proceedings according to law.
476 So.2d 809.
After remand, defendants amended their answer to affirmatively plead the doctrine of equitable estoppel, or laches. After trial, the court granted the declaratory judgment and found that plaintiff did not resign from his tenured position at Southern. In its original reasons for judgment it denied, however, plaintiff's demand for salary. Later, the trial court amended its original reasons and granted plaintiff his salary for the academic years beginning with 1984-1985. Defendants have suspensively appealed.
Initially we note that neither the trial court's original reasons nor its amended reasons for judgment addressed defendants' affirmative defense. We also find it unnecessary to treat defendant's affirmative defense in our review because the record convinces us that plaintiff voluntarily abandoned his job. Even though plaintiff, a tenured law professor, possessed a property interest in his position which requires due process protection under both the state and federal Constitutions, we find that he abandoned his position, which action divested him of any protected property rights. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Bell v. Dept. of Health and Human Resources, 483 So.2d 945 (La.1986), reh'g denied, cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55; Kalme v. West Virginia Board of Regents, 539 F.2d 1346 (4th Cir.1976).
We do not agree with the trial court's finding in its original reasons for judgment that plaintiff did not abandon his job because the July 30, 1980, letter was a request for a hearing if his employment was not to be continued. This letter arrived some ten weeks after Agnihotri had first requested plaintiff to notify the school of his availability. In the interim, plaintiff testified, he was too busy grading papers to respond to Agnihotri; he testified he responded as he eventually did because he wanted to see what he was going to get "and sort of deal before I tell you, you know." Contracts were made yearly at Southern. The letter does express the hope that there would be no "involuntary" termination of employment "before a finding of just cause after due deliberations... are had," but goes on to say that the writer reserved his rights to make up his mind after he had a chance to think over the terms of the appointment. It reads more like a first step in negotiating a contract than a demand for a hearing after termination. In any event, Agnihotri's letters before July 30 cannot be construed as notice of "involuntary" termination of plaintiff.
In Kalme, a tenured professor brought suit alleging he was denied his job without due process. Kalme had accepted another job while simultaneously signing a contract with West Virginia State College. He *476 failed to show up at the beginning of the fall term to teach. Kalme was informed by the president of the college that he abandoned his job. The court held that Kalme's voluntary breach of contract led to abandonment of his property rights under the contract because any property right was dependent upon the contractual relationship. See also Akyeampong v. Coppin State College, 538 F.Supp. 986 (D.Maryland 1982).
Plaintiff, like Kalme, voluntarily breached his contract with Southern when he refused to respond to Southern's reasonable request as to his availability. Plaintiff argues that he was a tenured faculty member and nothing in the contractual relationship required him to respond to Agnihotri's inquiries. We believe Southern was entitled to make such inquiries, since it would lose accreditation if its faculty practiced law in violation of Rule 402(B) of the ABA Standards For Approval of Law Schools.
Because the abandonment was voluntary on plaintiff's part, his July 30 letter which speaks of an "involuntary" termination of his contract cannot be considered a request for a hearing. Plaintiff was never terminated by Southern, and Southern believed that he had abandoned his job. He never asked for sabbatical leave; he simply never returned. Defendants' answer in this proceeding alleged that plaintiff voluntarily abandoned any rights he had to contest his resignation, not his termination. See Jones v. Orleans Parish School Board, 679 F.2d 32, 37, n. 6 (5th Cir.) (opinion withdrawn in part in Jones v. Orleans Parish School Board, 688 F.2d 342 (5th Cir. 1982)).
It was plaintiff's voluntary refusal to respond to Southern's reasonable request for advice as to his full-time availability for teaching the fall 1981 semester which created the loss of his job. Plaintiff's failure to respond to Agnihotri's letters did not result in his termination. Plaintiff was terminated only after he voluntarily abandoned his job. He relinquished his property rights, and defendants owed him no hearing because there were no rights left to protect. Plaintiff's suit is dismissed at his costs.
REVERSED AND RENDERED.
NOTES
[1] A copy of the return receipt shows the signature of Milton Osborne, Jr., and is dated May 21, 1980.