hWALTZER, Judge.

STATEMENT OF THE CASE

The Department of Police, City of New Orleans (the City) terminated its employee, Monica Paul, on 18 February 1995. Ms. Paul appealed her termination to the Civil Service Commission, which found on 22 February 1996, following a full evidentiary hearing, that the City denied Ms. Paul her right to due process. The Commission upheld her appeal and granted her Motion for Summary Disposition. From this ruling, the City appeals. Finding no manifest error, we affirm.

STATEMENT OF FACTS

Ms. Paul testified that she has been a Civil Service employee since August of 1989 and began working for the New Orleans Police Department (NOPD) communications department in November of 1990 or 1991. After a one year probation period, she became a permanent NOPD employee holding the position of Complaint Operator, a position requiring typing. In May 1994, she suffered multiple wrist and shoulder sprains in a non-work-related automobile accident. She saw Dr. Stewart Altman from May 1994 through January 1995. She received written notes from Dr. Altman stating that she could not perform her regular typing duties and noting the need for continuing re-evaluation of her condition. She forwarded these notes to Sgt. Sterling D. Williams, Jr. Sgt. Williams assigned her to the command desk, where she would not have to type. She was ^assigned to one of several command desk positions which regularly rotated among floor employees to enable them to upgrade their skills and to accommodate temporary disabilities. Because of her continuing inability to perform her job as a complaint operator and the possibility of confusion arising from her continuation on the command desk, she began to seek an alternative position within the Civil Service system that would not require her to type.
In August 1994, Lt. Christopher Maurice came to the communications division. Shortly thereafter he told Ms. Paul that two of her co-employees had inquired about her injuries and that he had discussed her injuries with them. Ms. Paul determined from NOPD Internal Affairs Division’s Sgt. Jimmy Bach that Lt. Maurice’s actions violated NOPD policy or Civil Service rules. Ms. Paul brought the matter to Ann Russo of the Civil Service who advised her to pursue the possibility of a remedy under the Americans with Disabilities Act with Janice Roussel. As a result of this inquiry, Ms. Paul interviewed with other City departments.
On 13 September 1994, Capt. Linda Buc-zek advised Lt. Maurice to require Ms. Paul to provide by 20 September 1994 a physician’s diagnosis and prognosis with the expected date of her full return to duty. Ms. Paul signed receipt of this advice on 16 September 1994 and provided a note from Dr. Altman showing that he saw Ms. Paul on 16 September 1994 and she could return to work, but should refrain from typing for three weeks.
On 27 September 1994, at Lt. Maurice’s direction, Ms. Paul was re-assigned from the command desk to work on the floor. While working on the floor, she did not file any complaints about her ability to perform that job and was willing to continue to work in that capacity. Early on 5 October 1994, she was called to |3a meeting with Lt. Maurice, Sgt. Williams and Capt. Buczek and was given two options: to go back to the floor and perform the duties for which she was hired or to return home using sick leave until such time as she would be able to perform fully the duties of her position. These op *591 tions were memorialized in a written memorandum signed by Lt. Maurice and acknowledged in writing by Ms. Paul. She chose to return to the floor, continued to work, and had no problems. Shortly thereafter, Lt. Maurice called her in and, in the presence of Sgt. Williams, said after further consideration he had decided that he did not want her to work there any longer. According to Capt. Buezek’s memorandum of 6 October 1994, she, Lt. Maurice and Sgt. Williams came to this decision believing that Ms. Paul’s agreement to work against medical advice was not freely given and was not an informed decision on her part. After having consulted with Janice Roussel by telephone, Ms. Roussel agreed that Ms. Paul should not be allowed to decide to work against medical advice.
On 17 October, Capt. Buczek wrote to Ms. Paul advising that Ms. Paul then had an annual leave balance of 8.37 days and a sick leave balance of 4.40 days. Should Ms. Paul be unable to return to work after the exhaustion of these leave days, she was required to submit a written request for sick leave without pay for a maximum of ninety days together with a physician’s statement of necessity and approximate duration of treatment, convalescence or rehabilitation. According to Capt. Buezek’s letter, failure to comply might result in termination of ... employment.
On 3 November 1994, Deputy Police Superintendent Duane D. Johnson advised Ms. Paul that the NOPD Communications Division could not accommodate her disability, and that she should request accommodation from | Janice Roussel, Personnel Director. Chief Johnson testified that both civilian classifications in the NOPD Communications Division at that time required typing ability. Chief Johnson also advised Ms. Paul that her accumulated leave was exhausted, and she should submit a written request for sick leave without pay for a maximum of ninety days accompanied by her physician’s letter.
As the overall commander of the unit in which Ms. Paul worked, Chief Johnson was responsible for any internal investigation that took place. He testified that he directed Capt. Buczek to write the memorandum of 17 October to Ms. Paul. In response, Ms. Paul wrote to Janice Roussel, Personal Director, seeking accommodation under the Americans with Disabilities Act.
The record contains notes from Ms. Paul’s physicians showing that she was seen on 11 and 13 October by Dr. Stewart. She was evaluated by Dr. Edward M. Campbell on 21 October and found to be unable to type, but was able to perform clerical tasks. Dr. Campbell said the length of Ms. Paul’s disability was undetermined. Dr. Stewart submitted a note showing treatment on 5, 9, 11 and 14 November. The record includes Dr. Campbell’s Return to Work Authorization dated 14 November, noting Ms. Paul’s continuing disability to type. Chief Johnson testified that on 28 November he received a copy of an unsigned letter from Ms. Paul to Capt. Buczek requesting sick leave without pay.[1] Chief Johnson testified that this document “is a request for sick leave without pay, which is what we requested from Ms. Paul.”
| gChief Johnson identified his comments in reply to Capt. Buezek’s memorandum of 30 November 1994. Chief Johnson directed Capt. Buczek to issue a department letter to reflect that Ms. Paul’s request for ADA accommodation would be reviewed and that she must submit a proper signed request for leave without pay, failing which she would be dropped from the rolls. He also directed that Capt. Buczek advise when and how a decision will be reached on the accommodation request.
On 23 January 1995, Chief Johnson wrote to Ms. Paul asking for a written request for leave without pay with a physician’s statement. To the best of his knowledge, Ms. Paul did not comply with this request.
*592 On 15 February 1995, Captain Ernest R. Demma, who had replaced Capt. Buczek as Commander of the Communications Division, advised Chief Johnson that on 14 February at approximately 3:00 p.m., Ms. Paul said she would like to have her sick leave without pay status extended for an additional 90 days. Capt. Demma said he told her that she would have to comply with the guidelines set forth in Chief Johnson’s letter of 23 January 1995. He advised Ms. Paul that she was to obtain the necessary documentation from her doctor and submit it to him by the end of that work day. Ms. Paul testified that when she spoke with Capt. Demma, she was in bed, suffering from bronchitis. She advised Capt. Demma that she could not obtain the note that day because of her illness and asked if she could have someone bring it in the next day, after she had been able to see her doctor and obtain his portion of the required documentation. Capt. Demma declined. She then made the same request to Chief Johnson who told her he would not accept the material other than on that day, 14 February 1995. On 17 February 1995 the Superintendent of Police wrote advising Ms. Paul that she was dropped |6from the NOPD rolls effective 18 February 1995, and that she may have the right to appeal this decision to the City Civil Service Commission within thirty days.
Chief Johnson testified that Ms. Paul was not afforded the opportunity to appear at a pre-termination hearing, and that, in fact, no pre-termination hearing was held by the NOPD.

STANDARD OF REVIEW

In civil service disciplinary cases, an appellate court is presented with a two-pronged review function: in deciding whether to affirm the Commission’s factual findings, we must apply the clearly wrong or manifest error rule prescribed generally for appellate review; further, in evaluating the Commission’s determination as to whether the disciplinary action is based on legal cause and commensurate with the infraction, the court should not reverse or modify a Commission order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Bannister v. Department of Streets, 95-0404. p. 8 (La.1/16/96), 666 So.2d 641, 647.
We are also instructed that Civil Service rules have the force and effect of law. La. Const, art. X, Sec. 10(A)(4); Bannister, supra at p. 5, 666 So.2d at 645.
City Civil Service Rule IX provides in pertinent part:
1.1 When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
(a) termination from the service.
[[Image here]]
Jt1.2. In every case of termination of employment of a regular employee, the Appointing Authority shall conduct a pre-termination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action.

FIRST ASSIGNMENT OF ERROR: The Civil Service Commission erred in not first addressing the issue of whether Ms. Paul abandoned her job.

The City relies on Osborne v. Stone, 536 So.2d 473 (La.App. 1 Cir.1988), writ denied 537 So.2d 1164 (La.1989), cert. denied 493 U.S. 813, 110 S.Ct. 60, 107 L.Ed.2d 28 (1989) in support of its abandonment theory. This reliance is misplaced. In Osborne, the defendants raised as an affirmative defense the doctrine of equitable estoppel or laches. The instant record is devoid of such an affirmative defense. Further, Osborne was not a Civil Service employee. In addition, he was found to have breached his contract by refusing to respond to his employer’s reasonable request as to his availability. The Court held specifically that Osborne, unlike Ms. Paul, had not been terminated.
Ms. Paul’s supervisors admitted that she expressed willingness to work in her desig *593 nated job even against her doctor’s recommendation. It was her supervisors who required her to take sick leave until her muscle sprains resolved. The record clearly shows that Ms. Paul attempted to comply with the City’s request for documentation of her status. She had a reasonable belief that her written request to extend her sick leave without pay for 90 days was proper and furnished physicians’ statements of continuing treatment through November of 1994. She indicated both to Chief Johnson and to Capt. Demma her willingness to provide an updated physician’s statement as soon as she was physically able to present herself at her doctor’s office. We find no error in the Commission’s apparent acceptance of Ms. Paul’s version of these events, which was not ^Immaterially contradicted by the City’s witnesses. Likewise, there is no error in his implicit finding that the City was unreasonable in requiring Ms. Paul, then ill with bronchitis, to manage between 3 p.m., when Capt. Demma gave his ultimatum, and the close of business that same day to rally, obtain an appointment with her treating physician, go to his office, undergo an examination, obtain the physician’s written statement, and deliver the statement to Capt. Demma at the NOPD Communications Department.
This assignment of error is without merit. SECOND ASSIGNMENT OF ERROR: The Civil Service Commission erred in concluding that the action taken against the ap-pellee was a disciplinary action.
The City contends that Ms. Paul’s discharge was not a termination for cause, but a discharge for failure to follow the administrative procedures set forth in the various letters and memoranda produced by her supervisors. However, the City and its witnesses have consistently referred to the final result as Ms. Paul’s termination.
This assignment of error is based upon the City’s attempted characterization of Ms. Paul’s actions as abandonment of her position. Because we agree with the Commission’s implicit rejection of that characterization, this case is squarely controlled by Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) and Maurello v. Department of Health and Human Resources, Office of Management & Finance, 510 So.2d 458, 460 (La.App. 1 Cir.1987), writ denied 514 So.2d 460 (La.1987). Ms. Paul was possessed of a property right in her continued employment of which she could not be deprived |9except pursuant to constitutionally adequate procedures in accordance with the due process provisions of the Constitution.
Civil Service Rule IX, sec. 1.2 codified this due process requirement, mandating a pre-termination hearing in every case of employment termination. The testimony of the City’s witnesses establishes that Ms. Paul was denied the required pre-termination hearing.
This assignment of error is without merit.

CONCLUSION

We find that the record supports the Civil Service Commission’s decision and that the decision is not manifestly erroneous or clearly wrong.

AFFIRMED.

. The document, admitted as Exhibit C-7, was identified by Chief Johnson as a typewritten memo dated November 28th, 1994 from Ms. Paul to Capt. Buczek, beginning, "Due to a car accident I was involved in.” The document does not appear in the record. Among the exhibits is a C-7 which appears to be a handwritten note from Capt. Buczek dated 22 November 1994. According to Chief Johnson’s testimony, this note was attached to Ms. Paul’s letter requesting leave without pay.