| ERIN DESDUNES | * | NO. 2024-CA-0424 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| SEWERAGE & WATER | * | |
| BOARD OF NEW ORLEANS | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9454
* * * * * *
**Judge Sandra Cabrina Jenkins**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins,
Judge Dale N. Atkins)

**BELSOME, C.J., DISSENTS AND ASSIGNS REASONS**


Rowena Teresa Jones
SOUTHEAST LOUISIANA LEGAL SERVICES
1340 Poydras St.
Suite 720
New Orleans, LA 70112

   COUNSEL FOR PLAINTIFF/APPELLEE


Darryl Harrison
Chanelle L. Collins
SEWERAGE & WATER BOARD
625 St. Joseph Street
Room 201
New Orleans, LA 70165

   COUNSEL FOR DEFENDANT/APPELLANT


        **AFFIRMED**
        **MARCH  27, 2025**

SCJ
DNA

This is a civil service matter.  Appellant, Sewerage and Water Board of New Orleans (the "Board"), appeals the decision of the Civil Service Commission for the City of New Orleans (the "Commission") which granted Appellee's appeal, Erin Desdunes, and reinstated him to his employment.  For the reasons that follow, we affirm the decision.

## FACTUAL AND PROCEDURAL HISTORY

The Board hired Mr. Desdunes as a laborer in its Water Meter Reading Department on April 25, 2022.  The Board notified Mr. Desdunes, by letter, of his hire at the Sierra Madre Drive address listed on his job application.  After his hire, Mr. Desdunes completed the Board's change of address form.  He provided Parc Brittany Boulevard as his address in place of the Sierra Madre Drive address. On or around October 2022, Mr. Desdunes achieved permanent employee status within the civil service system.

Mr. Desdunes was arrested at his worksite and taken into custody by the New Orleans Police Department on November 1, 2022.  He was subsequently released on January 14, 2023.

1

The day following his release, Mr. Desdunes informed his supervisor that he had been cleared of any wrongdoing and inquired about his return to work. The supervisor advised him to discuss the matter with Monique Chatters, the manager of the Meter Reading Department.

On January 16, 2023, Mr. Desdunes spoke with Ms. Chatters. Ms. Chatters told Mr. Desdunes that the Human Resources Department ("HR") needed to give him clearance before he could resume work. Mr. Desdunes proceeded to contact HR. The HR representative told Mr. Desdunes that Ms. Chatters had not yet discussed with HR his wish to return to work. Thereafter, Mr. Desdunes returned to the Board almost every Friday and Monday to get an update on his return status. During this period, he spoke with various supervisors and met with Ms. Chatters. Ms. Chatters reiterated that HR still had not responded regarding his clearance to return to work. Mr. Desdunes attempted to find work with other "zones" within the Board.

The Board mailed a disciplinary letter (the "termination notice"), dated March 8, 2023, to Mr. Desdunes' Parc Brittany Boulevard address. The termination notice included the following:

> On November 1, 2022, you were taken into custody by NOPD and was [sic] not released until January of 2023. The department has not received any communication from you for the duration of your incarceration. As a result of failing to report to work for three (3) consecutive days or more, the department considers you to have voluntarily resigned employment. Therefore, your department has recommended termination of your services within the Sewerage and Water Board of New Orleans (SWBNO).

Mr. Desdunes did not know the termination notice had been sent until he went to the Commission's office on April 11, 2024, to obtain an update on his

status. It was at this point he was made aware of his termination. Mr. Desdunes appealed the termination notice on the same date.

In response, the Board filed a Motion for Summary Disposition (the "Motion"), maintaining the appeal was untimely pursuant to Civil Service Rule II, Section 4. That Rule provides, in part, that appeals must be received no later than the thirtieth calendar day after the date of the disciplinary letter; hence, the Board argued the appeal was not timely inasmuch as Mr. Desdunes took the appeal on the thirty-fourth day following issuance of the termination notice.[1]

The hearings on Mr. Desdunes' appeal took place on November 29, 2023, and December 12, 2023. At their conclusion, the Commission adopted the Hearing Examiner's Report and granted Mr. Desdunes' appeal, finding that Mr. Desdunes' termination lacked the required due process. In particular, the Commission noted that the Board failed to give Mr. Desdunes proper written or oral notice of his termination and deprived him of a pre-termination hearing, which also requires notice in advance of the termination action. Accordingly, the Commission ordered Mr. Desdunes' reinstatement and reimbursement for all lost wages and emoluments.

The Board appeals the Commission's ruling to reinstate and reimburse Mr. Desdunes.

---

[1] Civil Service Rule II, Section 4, states the following:

> Appeals to the Commission must be actually received in the Department of Civil Service no later than the close of business on the thirtieth calendar day following the date of the disciplinary letter provided to the employee by the Appointing Authority. Should the thirtieth (30th) calendar day fall on a weekend or an official city holiday, written appeals will be accepted no later than the close of business on the work day immediately following. The date the appeal is date/time stamped in the Civil Service Office shall be presumed to be the date of the appeal.

## DISCUSSION

### *Standard of Review*

Appellate courts utilize a mixed standard of review in reviewing a decision of the Commission. *See Morrison v. New Orleans Police Dep't*, 2022-0051, p. 7 (La. App. 4 Cir. 7/13/22), 344 So.3d 259, 265 (citations omitted). The Commission's findings of fact are reviewed under a manifest error standard of review. *See Williams v. Sewerage & Water Bd.*, 2021-0020, p. 4 (La. App. 4 Cir. 1/5/22), 334 So.3d 818, 821. Appellate courts should accord great deference under the manifest error standard of review to mixed questions of fact and law. *Pitre v. Dep't of Fire,* 2021-0632, p. 7 (La. App. 4 Cir. 4/20/22), 338 So.3d 70, 75. In determining whether the Commission's decision was based on legal cause and commiserate with the infraction, an appellate court should not modify the decision unless the decision was arbitrary, capricious, or amounted to an abuse of discretion. *Williams*, 2021-0020, p. 4, 334 So.3d at 822 (citations omitted).

### *Assignments of Error*

The Board raises two assignments of error: (1) the Commission erred in finding that Mr. Desdunes' appeal was timely based on the Board's alleged inadequate notice of termination; and (2) the Commission erred in finding that the Board deprived Mr. Desdunes of a pre-termination hearing. Both issues regarding the timeliness of Mr. Desdunes' appeal and his right to a pre-termination hearing raise due process concerns. The question of Mr. Desdunes' entitlement to a pre-termination hearing may be dispositive of the due process issues regarding the

4

adequacy of the notice and the timeliness of the appeal, consequently, we shall first address that error.

***Due Process/Pre-termination Hearing***

Our jurisprudence recognizes that "[c]ivil service employment is a property right that cannot be taken away without due process." *Plains v. Sewerage & Water Bd.*, 2021-0086, p. 5 (La. App. 4 Cir. 12/15/21), 366 So.3d 193, 197 (citations omitted). As explained in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed. 494 (1985), this due process right for civil service employees is a constitutional guarantee.

> The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Arnett v. Kennedy, supra,* 416 U.S., at 167, 94 S.Ct., at 1650 (POWELL, J., concurring in part and concurring in result in part); see *id.,* at 185, 94 S.Ct., at 1659 (WHITE, J., concurring in part and dissenting in part).

As such, tenured or classified civil service employees have a property right in continued comparable employment that cannot be taken away absent due process. *See Moore v. Ware*, 2001-3341, p. 12 (La. 2/25/03), 839 So.2d 940, 948 (citations omitted). The meaning of "due process" as discussed in *Moore*, 2001-3341, pp. 12-13, 839 So.2d at 949, is as follows:

> "[The] central meaning of procedural due process is well settled. Persons whose rights may be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified." *Wilson v. City of New Orleans,* 479 So.2d 891, 894 (La.1985).

5

Correlatively, this right to notice and opportunity to be heard must be extended at a meaningful time and in a meaningful manner. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

(alteration in original).

In the present matter, Civil Service Rule IX, Section 1.2 (the "Pre-termination Rule") states that "[i]n every case of termination of employment of a regular employee, the appointing authority shall conduct a pre-termination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action." The scope of a civil service employee's pre-termination hearing right is delineated in *Ebbs v. New Orleans Fire*, 2022-0195, pp. 6-7 (La. App. 4 Cir. 12/28/22), 355 So.3d 1115, 1120.

This Court discussed civil service employees' due process right to notice and a pre-termination hearing in *Regis v. Dep't of Police*, 16-0821, pp. 16-17 (La. App. 4 Cir. 5/24/17), 221 So.3d 165, 175 (quotation omitted) as follows:

Louisiana Constitution Article 10, § 8, provides in part that: "No person who has gained permanent status in classified state or city service shall be subject to disciplinary action except for cause expressed in writing." Rule IX, § 1.2 of the Rules of the Civil Service Commission for the City of New Orleans, states that "[i]n every case of termination of employment of a regular employee, the appointing authority shall conduct a pretermination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action." In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), the United States Supreme Court held:

The essential requirements of due process ... are notice and an opportunity to respond....The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story....To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

(alteration in original).

In *Paul v. New Orleans Police Dept.*, 1996-1441 (La. App. 4 Cir. 1/15/97), 687 So.2d 589, as in the present matter, the Court considered whether the employee was entitled to a pre-termination hearing where her employer, the Department of Police, City of New Orleans (the "City"), claimed separation from employment arose from job abandonment. The employee, Ms. Paul, a permanent City employee, had been on sick leave as a result of a non-work-related accident; and thereafter, sought to return to work within the limitations prescribed by her physician, which involved no typing. *Id.*, 1996-1441, pp.1-2, 687 So.2d 590-91. The City gave her the option to return to full duty or utilize her sick leave; she chose to return to full duty. *Id.*, p. 3, 686 So.2d at 591. Thereafter, City supervisors decided she should not work against medical advice; instructed her to submit a written request for sick leave without pay in the event she could not return to full duty after her paid medical leave had been exhausted; and ultimately, advised that the City could not accommodate her medical disability. *Id.*

On January 23, 1995, after Ms. Paul's paid leave was exhausted, Chief Duane D. Johnson instructed Ms. Paul to include a physician's statement with a written request for leave without pay. *Id.*, p. 5, 686 So.2d at 591. When Ms. Paul requested an additional 90 days for leave without pay on February 14, 1995, Capt. Ernest Demma informed her that she had to provide a physician's statement with the request as outlined in Chief Johnson's January 23, 1995 correspondence. Capt. Demma and Chief Johnson each declined Ms. Paul's request to submit the information the following day because Ms. Paul was sick with bronchitis. On February 17, 1995, the City wrote Ms. Paul to advise that she had been dropped from the NOPD rolls, effective February 18, 1995. *Id.*, pp. 5-6, 687 So.2d at 592. Chief Johnson testified at her hearing that Ms. Paul was not given the opportunity

7

to appear at a pre-termination hearing; and also confirmed that no pre-termination hearing was held. *Id.*, p. 8, 687 So.2d at 593. In explaining its position, the City alleged Ms. Paul had abandoned her job because she had not complied with the administrative procedures of her supervisors regarding leave without pay. *Id.*, p. 7, 687 So.2d at 592. However, citing the testimony of the City's own witnesses and Ms. Paul's attempt to document her status, the *Paul* Court agreed with the Commission's findings and rejected the City's characterization of Ms. Paul's actions as job abandonment. *Id.*, pp. 7-8, 687 So.2d at 592-93. In affirming the Commission's decision to grant the employee's appeal, the Court held that the employee had a property right that could not be deprived absent adequate compliance with constitutional due process procedures; and in this instance, the City had improperly denied Ms. Paul a pre-termination hearing. *Id.*, pp. 8-9, 687 So.2d at 593. Similarly, in the case *sub judice*, we also agree with the Commission's findings that the Board mischaracterized Mr. Desdunes' actions as job abandonment and as a result, denied him a pre-termination hearing and notice in advance of his termination.

In this matter, the Board acknowledges that the Pre-termination Rule covered Mr. Desdunes in his capacity as a permanent, "regular" civil service employee. However, it argues Mr. Desdunes was not entitled to a pre-termination hearing because he violated the Board's Attendance Policy and abandoned his job. The Board supports this argument by relying on the testimony of Kimberly Batiste, the Board's Employee Relations Manager, who handled the disciplinary process regarding Mr. Desdunes' failure to report to work. Ms. Batiste testified that the Board's Attendance Policy states the following:

> An employee who fails to report to work as scheduled for three (3) consecutive working days without notice or without approval may be considered to have voluntarily resigned from his or her position due to job abandonment. Since job abandonment is considered a voluntary resignation, it is not a disciplinary action and therefore not subject to a Pre-Termination hearing.

She explained that Mr. Desdunes did not get a pre-termination hearing because he failed to report to work for three days or more and was considered to have abandoned his job. Ms. Batiste contended that "job abandonment is not a disciplinary issue, it's considered voluntary resignation. We treat it as such and terminate the - - separate the employee out of the system and process the Louisiana Workforce Commission separation paperwork, as such."

However, the Commission found that Ms. Batiste's and Ms. Chatters' testimonies showed the Board knew that Mr. Desdunes did not abandon his job. The Commission noted that Ms. Batiste and Ms. Chatters each testified they were aware Mr. Desdunes' incarceration caused his failure to report to work. Ms. Chatters' testimony also confirmed that Mr. Desdunes spoke to her on January 16, 2023, about his release and desire to return to work. Regardless, Ms. Chatters did not inform Ms. Batiste about Mr. Desdunes' release and request for reinstatement at the time she asked Ms. Batiste to formally terminate Mr. Desdunes. Ms. Batiste described Ms. Chatters' request to terminate as follows:

> So well, Ms. Monique wanted to do a notice of intent to terminate because the employee had not communicated. Did - - she didn't - - as far as I know, she wasn't aware when the employee was released. She completed the notice of intent to terminate. She provided all the documentation.

Upon considering this testimony, the Commission explained its decision that Mr. Desdunes was denied due process as follows:

> In this case, the Sewerage & Water Board wholly failed to give Mr. Desdunes a pre-deprivation hearing, as required by *Loudermill.* In

9

addition, the Sewerage & Water Board failed to comply with Civil Service Rule IX, section 1.2, by failing to give Mr. Desdunes advance notice of its intent to terminate his employment. The Sewerage & Water Board's reliance on its policy characterizing an absence of three consecutive days as a voluntary resignation is unpersuasive in this case. The Sewerage & Water Board, including the individuals with whom Mr. Desdunes was speaking about return to work, were aware that he was absent because he was incarcerated and that he had visited the jobsite repeatedly in order to return to work.

Because the Sewerage & Waterboard failed to provide the required due process, the Commission grants Mr. Desdunes' appeal.

Based on the testimony and facts offered at the hearings, we find no manifest error in the Commission's conclusion that the Board used a faulty premise of voluntary resignation to justify Mr. Desdunes' termination. Contrary to the Board's claim of job abandonment and voluntary resignation, the evidence substantiates the Board had direct knowledge that Mr. Desdunes' absence from work resulted from his incarceration and knew he had been released at the time of actual termination. It is uncontested that the Board deprived Mr. Desdunes of his constitutionally protected right to be heard at a pre-termination hearing and did not notify him prior to the decision to terminate. Accordingly, the Board's claim that the Commission erred in finding Mr. Desdunes was denied due process in contravention of the Pre-Termination Rule is without merit.

### Due Process/Timeliness of the Appeal

The Board also assigns as error the timeliness of Mr. Desdunes' appeal of his termination. This error, likewise, raises due process issues as to whether the Board's notice of termination to Mr. Desdunes infringed on his vested property right interest in his employment. We find that it did.

The Board argues that it gave Mr. Desdunes proper written notice when it sent the termination notice to Mr. Desdunes' Parc Brittany Boulevard address. The

Board contends the sufficiency of the notice should not be vitiated by the fact that it was sent to an incorrect address. Instead, it suggests this error resulted from Mr. Desdunes' failure to supply HR with an updated address. The Board iterates that Mr. Desdunes was aware of the Board's change of address procedure because he had previously properly changed his address. Therefore, the Board claims Mr. Desdunes was not entitled to an extension to file an appeal inasmuch as he caused the delay in his receipt of notice.

Any resolution regarding the timeliness of Mr. Desdunes' appeal necessarily requires consideration as to whether he received proper notice of his termination. The mandate to provide notice has been expanded to include oral, as well as written notice. *See Louderville*, 470 U.S. at 546, 105 S.Ct. 1487, 84 L.Ed. 494 (1985). This expansion is in line with the precept that civil service employment is a property right and in order for an employee to get the benefit of that right, the notice "must be extended at a meaningful time and in a meaningful manner." *See Moore*, 2001-3341, p. 13, 839 So.2d at 949. Accordingly, this Court will consider the written and oral notice received by Mr. Desdunes in deciding whether Mr. Desdunes received sufficient notice of his termination for purposes of lodging a timely appeal. *See Matusoff v. Dept. of Fire*, 2019-0932, p. 6 (La. App. 4 Cir. 5/20/20), 364 So.3d 240, 244.

Mr. Desdunes counters the Board's actions caused the termination notice to be sent to an invalid address and the resulting delay in his receipt of notice. He emphasizes that the Board gave him conflicting change of address instructions and that another supervisor actually knew his current address. The Commission accepted Mr. Desdunes' account as credible. The Commission found that:

11

In this case, the Sewerage & Water Board sent the notice of termination to Mr. Desdunes' old address. Based on his testimony, Mr. Desdunes inquired about changing his address on file, but he received inaccurate information from his supervisor. Further, the Sewerage & Water Board had actual notice of his current residence. The Sewerage & Water Board failed to inform Mr. Desdunes of his termination in writing or orally on the multiple occasions he was present in person at the jobsite. Therefore, because M[r]. Desdunes failed to receive notice of his termination, he was unable to file an appeal within 30 days.

In accordance with the precepts outlined in *Moore*, *supra*, Mr. Desdunes' vested property right in his civil service employment entitled him to meaningful notice to appeal his termination—regardless of the reason for the termination. Based on the Commission's findings, the Board did not give Mr. Desdunes sufficient notice of his termination at a meaningful time and in a meaningful manner when it knew or should have known that it sent the termination notice to an invalid address. Additionally, the Board overlooked opportunities to orally notify Mr. Desdunes of his termination. Accordingly, we find no abuse of discretion or manifest error with the Commission's decision that the Board's insufficient notice of termination interfered with Mr. Desdunes' ability to timely exercise his right to appeal. Therefore, Mr. Desdunes' filing of his appeal on the same date that he actually received notice was timely. As such, the Board's assignment of error disputing the timeliness of the appeal lacks merit.

## CONCLUSION

Based on the foregoing reasons, the Commission's decision of March 14, 2024 to grant Mr. Desdunes' appeal, order his reinstatement, and award reimbursement for lost wages and emoluments is affirmed.

**AFFIRMED**

12